N. H. Engle & Sons, Inc., a Corporation, the First National Bank of Lake Forest, a National Banking Association, as Trustee Under Trust Agreement Dated January 20, 1953, and Known as Trust No. 989, Martin Hood and Victorine Hood, Plaintiffs-Appellees, v. Jindrich Laurich and Blaza Laurich, Defendants-Appellants.

Gen. No. 67–152.

Second District.

September 10, 1968.

Robert J. Heilgeist, of Lake Villa, and Sidney Z. Karasik, of Chicago, for appellants.

Hall, Meyer, Fisher, Holmberg, Snook and May, of Waukegan, for appellees.

ALLOY, P. J.

This cause was instituted as an action to enforce certain restrictive covenants in a deed which provided that the property involved shall be "used, improved and occupied for residence purposes only." Plaintiff, N. H. Engle & Sons, Inc., a corporation, was the grantor-developer, Martin Hood and Victorine Hood were neighbors who owned a home in the area and The First National Bank of Lake Forest was the Trustee of the property under a Land Trust. Defendant Jindrich Laurich is a physician and Blaza Laurich is his wife. Following a trial before the judge without intervention of a jury, a permanent injunction was decreed in the trial court restraining defendant

Jindrich Laurich from maintaining a medical office in his home.

A number of years ago, one Edna Siebel laid out 23 lots along Sand Lake and named it Lindenhurst Estates Subdivision. In 1953, N. H. Engle & Sons, Inc. purchased the subdivision together with approximately 550 acres surrounding the subdivision (the purchase being made in the form of a land trust with First National Bank of Lake Forest as Trustee). This deed to the Engle company contained no restrictions. The bulk of the acreage was zoned for farming or for residences. Shortly after the purchase by the Engle company, an attempt was made to have the tract rezoned to allow the development of some businesses. This effort was unsuccessful, and the denial of such proposed zoning change was affirmed in the Supreme Court of this State (First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 130 NE2d 267).

Following such denial of zoning change, the Village of Lindenhurst was then incorporated with N. H. Engle as the main landowner in such village. Portions of the village were thereafter zoned for business, and businesses were developed on such property. Sixteen of the 23 lots in Lindenhurst Subdivision were outside the village limits, including the particular lot in question in the instant case. The Engle company subdivided and conveyed a number of lots in the 550-acre tract. Many of the lots were sold for residences and contained a restriction that they could be used for residence purposes only. The properties sold for businesses did not contain any such restrictions. All the lots sold in Lindenhurst Subdivision contained restrictions which specifically provided that the real estate could be used for "residence purposes only." It prohibited alteration or construction on said real estate of other than one single-family residence building designed and built for occupancy by a single family. Plans and specifications for such buildings and material and construction thereof were required to be submitted to

21

and approved by grantor before construction could be undertaken. A street called Grand Avenue physically separates Lindenhurst Estates Subdivision (containing 23 lots) from the other property purchased by the Engle company, and such lots in the subdivision were described as premium lots in the area, since the lots fronted on Sand Lake.

In 1960, the defendant, Dr. Laurich sought to set up a practice of his own in a new community which had no doctors. He met Morton Engle, a principal in the plaintiff's firm, and inquired if a doctor's office was available in a certain shopping plaza then being constructed by Engle on the north side of Grand Avenue in the Village of Lindenhurst. Engle rented him an apartment in a four-apartment building which was zoned for business and he told the doctor he could have a temporary office in the building. A lease was undertaken between the Engle company and Dr. Laurich for one of the apartments in the farmhouse-apartment building. The doctor resided in and engaged in his medical practice from the apartment in that building, on an understanding which Engle described as a "temporary expedient." In March of 1961, Dr. Laurich purchased Lot 5 of Lindenhurst Subdivision from the Engle company under a contract. The doctor testified that Engle advised him that the defendant-doctor could put a house on the lot and include his office in the house. Engle denied ever saying anything of this nature, but instead stated that he reminded the doctor of the restrictions which appeared in the contract and later in the deed to the doctor. In conjunction with the delivery of the deed, a covering letter was addressed to the Lauriches which contained the following language:

"Your attention is particularly directed to the restrictions contained in the deed. These restrictions are part of a general subdivision plan and must be strictly complied with.

22

"We are informed that Dr. Laurich intends to erect a building upon these premises which he will use and occupy as, and in which he will maintain and operate his permanent and principal doctor's office for the regular practice of medicine. Such use and occupation thereof would constitute a violation of the restrictions.

"The acceptance by you of the deed forwarded with this letter constitutes the representation to us and to the Grantor Trustee that you will strictly comply with said restriction. Violation by you of the restriction will compel us to institute proceedings for an injunction to restrain such use and occupation . . . ."

After the doctor had purchased the lot and prior to the time he commenced construction of his home with a built-in office, Engle and its representatives tried to persuade the doctor to take space for an office in a professional building being constructed by the Engle company. The doctor refused and the doctor and the Engles were thereafter not on friendly terms.

The doctor then caused plans to be prepared for his home which included several rooms designated for his medical practice such as an x-ray room. When the contractor informed him that it was unlikely that Engle would approve such a plan, the doctor changed his plans to show the medical area as a "family room." The plans were presented and approved and were thereafter changed before construction to provide partitions for the medical rooms. The home was completed with the medical facilities and with a parking lot for eight automobiles. The doctor thereafter began his medical practice in this home and had as many as 14 cars at one time parked outside his home. The Engle company and the bank as grantors, and the Hoods as homeowners in the Lindenhurst Subdivision, thereafter brought suit to enjoin the

defendant Dr. Laurich from carrying on his medical practice in his home.

There was testimony by a representative of Engle that the medical practice was detrimental to the surrounding area as it would reduce property values and destroy the image of the property. A real estate dealer also testified as to the negative effect of the medical practice on the surrounding area from a value standpoint and there was contrary evidence that the medical office was a benefit to the area. It was shown in the record that the Hoods could not see the doctor's home from the house owned by Hoods because of shrubbery and other houses. It was also shown in the record that the defendant's home was 1,200 feet from the Engle real estate office, 1,500 feet from the village hall, and 2,000 feet from the nursing home. The village hall and nursing home were on land zoned for business and the deeds to such property contained no restrictive covenant as to use. It was also shown that the real estate office was a temporary occupancy until the lots in the area were sold. A real estate appraiser testified that the general area in and around Lindenhurst was "residential with commercial use and occupancy and residences." There was also testimony that the shopping center, professional building, new church and a civic center addition to the village hall were the only changes of a business character in the area around Lindenhurst since 1961, when Engle sold Lot 5 to defendant doctor.

On appeal in this Court, defendant contends (1) that the practice of medicine in a home owned and occupied by a physician and his family does not violate covenants limiting the use of property for residential purposes only; (2) that the restrictions in the deed received by defendant were released by implication and abandoned or waived in the circumstances disclosed by the record; (3) that the grantor bank and the Engle company and the Hoods as owners of a lot were not entitled to enforce the restrictive

24

covenants and to obtain equitable relief in support thereof; and (4) that the findings of the Chancellor were against the manifest weight of the evidence.

■■ Restrictions contained in the deed limiting the use of the property for residential purposes have been held to be valid and enforceable under the laws of the State of Illinois (Housing Authority of Gallatin County v. Church of God, 401 Ill 100, 81 NE2d 500). In the case just cited, where a restriction read "to be used for residential purposes and not otherwise," the court determined that the construction of the church building was prohibited by such provision. It was pointed out in that case that an owner of real estate has a right to convey it subject to any condition or restriction which he deems fit to impose, provided the conditions or restrictions are not against public policy and do not materially impair the beneficial enjoyment of the estate. With respect to the particular problem which confronted the trial court and which is now before this Court, no Illinois case has been directed to our attention nor have we discovered any precedent in this State which specifically determines the question of whether the use by a physician for his medical practice of a portion of his home is violative of a restrictive covenant as to the use of property "for residence purposes only." The parties to this cause have cited cases from other jurisdictions some of which have emphasized the distinction between a professional and a commercial enterprise (Briggs v. Hendricks (Tex), 197 SW2d 511 (1946)). In determining the issue before the court, however, we do not believe that such distinction is appropriate or valid. The cases which have emphasized the physical effect on the surrounding area and which do not base the determination on whether a business-type enterprise is being carried on within the home seem to be more consistent with the type of covenant which we have under consideration. The mere physical appearance of the outside of the home should not, however,

be the sole criterion for allowing or denying an occupation or a profession from being carried on within the residence. We feel that the activity conducted within the home is the fundamental factor to be considered in making a determination as to whether there is a violation of the restrictive covenant.

■■ A persuasive case from New York, Stewart v. Barber, 182 Misc 91, 43 NYS2d 560, at page 563, summarizes a rule which has been adopted in some states in which the court stated:

> "It is not enough that the house is essentially residential in character in view of the words in the covenants 'exclusively for residential purposes.' It is immaterial that the portion of the premises used for the practice of dentistry is but a small portion of the whole, and hence the building is essentially a residence in view of the inhibition of its use for anything except residential purposes.

> . . . . . .

> "In spite of holdings seemingly to the contrary, I think where a physician or dentist sees his patients, or a lawyer meets his clients at his house in a room which would normally be called his office, he thereby destroys the character of his house as a private dwelling and it is no longer employed exclusively for residential purposes. . . . ."

We feel that this is a valid conclusion. When a professional man pursues an occupation in his home in which it is necessary that patients, clients or patrons call at his home for the purpose of obtaining treatment, or similar activity, it then becomes a nonresidential use, and is contrary to a restrictive covenant of the type which was contained in the deed in the instant case. The purpose of the covenant was to eliminate traffic, noise and confusion in the neighborhood so it remains a residential neighborhood. The use by a doctor of his home for such

purposes is clearly one type of use which was designed to be prohibited by the clause. It is understandable, that not all uses of a home for nonresidential purposes would be violative of the covenant referred to. An illustration of a use which apparently would not be a violation of the covenant, would be the use by an author of a portion of his home for the business of the author in the process of writing, etc. It is when the business or profession requires marked changes or activity outside of the residence itself in the form of noise, or displays, or patients entering and leaving in substantial numbers, that the use becomes a violation of the covenant.

■■ The single-family use restrictions were part of a general subdivision plan for Lindenhurst Estates. As such they are enforceable by the owner as against the grantee and by any grantee as against other grantees (Henricks v. Bowles, 20 Ill App2d 148, 155 NE2d 664). Plaintiffs as grantor and homeowner in the area around the doctor's property were proper parties to bring the action involved in the instant case (Dolan v. Brown, 338 Ill 412, 170 NE 425; Brandenburg v. Country Club Bldg. Corp., 332 Ill 136, 163 NE 440). We note that all the contracts executed for the sale of lots in the Lindenhurst Estates contained identical restrictions. No lot in the subdivision other than the lot occupied by defendant has been used for any purpose other than as a residence.

■ A further question arises as to whether the grantors or others who acquire title from grantors in the Lindenhurst area changed the character and environment of the neighborhood around defendant's lot and thus abandoned the restrictions in the deed by implication or otherwise justified the use thereof by the defendant doctor. The rule applicable in such cases has been referred to in Cuneo v. Chicago Title & Trust Co., 337 Ill 589, at page 595, 169 NE 760. The court in such case refers to the fact that restrictions upon the use of the property such as were created by deeds of the character

which we have before us and which are imposed as part of a general plan for the benefit of all the lots affected, give to the purchasers of the lots a right in the nature of an easement, which will be enforced in equity and, upon equitable principles against owners of other lots so affected. The court pointed out that where the intention was clearly shown by the restriction, and the enforcement of the restriction is necessary for the protection of substantial rights, they will be enforced. The court, however, stated in that case:

> "The rule in this State likewise is, that equity will not enforce a restriction where, by the acts of the grantor who imposed it or of those who derived title under him, the property and that in the vicinage has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant an injunction against violation of such restriction would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction."

That rule of law has been applied in the courts of this State for a number of years (Kneip v. Schroeder, 255 Ill 621, 99 NE 617; Ewertsen v. Gerstenberg, 186 Ill 344, 57 NE 1051). On the basis of the record in this cause, however, we do not believe that rule can be applied to permit the defendant doctor to maintain the medical practice in his home. The area under consideration we feel should be only the 23 lots in the Lindenhurst Estates Subdivision. All of the lots sold in the area by the plaintiff Engle company contained restrictions similar to those found in the deed to the doctor. The Lindenhurst Estates Subdivision was separated physically from the balance of the area by Grand Avenue on the north and by Sand Lake on the south. Because it is a separate area of the

character involved, in applying the rule referred to in the Cuneo case, only the Lindenhurst Estates Subdivision should reasonably be considered. This particular consideration was noted in O'Neill v. Wolf, 338 Ill 508, 170 NE 669, where the court found that changes on certain streets in the subdivision did not affect the character or environment of lots on another street in the same subdivision. The court in that case quoted from Morrow v. Hasselman, 69 NJ Eq 612, 61 A 369 (O'Neill v. Wolf, 338 Ill 508, at 523–524, 170 NE 669):

> "As to alleged violations on other streets and avenues, my view is that, even if proved, they are not material in this case, as the restrictions in each avenue, in a general plan of this kind, must be considered as adopted with special reference to each avenue and its improvement, and the rights of purchasers on one avenue who have in good faith bought and built according to its restrictions are not impaired or affected by acts of the vendor or other purchasers relating to the then existing restrictions on other avenues."

If we consider only the Lindenhurst Estates Subdivision with its 23 lots, the record discloses no change of any character or environment in this area which would operate to permit the defendant doctor to feel that the restrictions were abandoned or waived, since nothing new had been constructed since the doctor purchased his lot. The only use similar to a business in the subdivision was the real estate office of Engle which was shown to be only a temporary location until all the lots were sold. Even if we view the entire area of several miles surrounding the lot purchased by the doctor, it is difficult to justify a change of character or condition in the territory sufficient to allow the defendant doctor in the particular subdivision to have a restrictive covenant nullified. The record discloses that since the doctor purchased his lot

the only business type improvements in the area consisted of a church in a residential area and an addition to the civic center. There is no evidence that these small changes in any way materially affected the character of the area which was still primarily residential. The changes which were made prior to the purchase of Lot 5 and other areas certainly should not affect the use of Lot 5 since a specific provision was incorporated in the contract and the deed restricting the use to residential purposes only within the particular subdivision.

To justify the elimination of a use restriction the change in character or environment of the area must be clearly shown. In Housing Authority of Gallatin County v. Church of God, 401 Ill 100, 81 NE 500, the court affirmed a decree enjoining defendants from operating a church in a residential area in violation of a restriction in the deed limiting the use of the property to residential purposes, where there were many more changes in the community than in the instant case before us. Basically, the determination of this question is one of fact and it cannot be said as a matter of law that the area around the doctor's lot is so changed that the trial court should have removed the use restriction in question.

It is our conclusion, therefore, that the finding and determination of the trial court that there was a violation of the covenant for use as "residence purposes only," and that the finding was clearly consistent with the record. The record disclosed that a building had been constructed of which 615 square feet of the 1,400 square foot first floor was devoted to an office, a baby examining room, reception room, waiting room, x-ray room, and an examination room, all of which were completely segregated from the remainder of the building and had an opening for ingress and egress apart from the entryway to the residential area. There was also a 4,800 square foot gravel parking lot occupied by as many as 14 auto-

mobiles at the same time; that as many as 30 medical patients a day came to the residence for treatment. On the basis of such showing in the record we cannot conclude that the finding of the trial judge that the premises were not being used for residential purposes only was improper.

■ The point is also made that the parties all recognize that the doctor could furnish emergency treatment in his home without violating the use restriction. The doing of emergency service alone would clearly not be a violation of a restrictive covenant as to use, since this would not amount to using the premises for a purpose other than residential purposes. Emergency medical treatment in a home, is something which is rarely furnished, and normally results from the fact that the patient would be in need of immediate attention in most cases (rather than risking a trip to a doctor's office or hospital). We likewise feel that it is unnecessary to direct a modification of the decree to provide specifically for the circumstance that emergency medical treatment could be furnished by the doctor irrespective of where he might be. Such emergency medical service so furnished would not constitute a use violation and, therefore, we conclude, as the trial court apparently likewise concluded, that it is unnecessary to specify that such emergency medical treatment would not be a violation of the restrictive covenant. We likewise conclude, upon review of the entire record, that we would not be justified in setting aside the decree of the trial judge as being against the manifest weight of the evidence.

The decree of the Circuit Court of Lake County will, therefore, be affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.