THEODORE CORDOGAN *et al.*, Plaintiffs-Appellees, *v.* UNION NATIONAL BANK OF ELGIN, Trustee, *et al.*, Defendants-Appellants.

Second District   No. 77-505

Opinion filed September 15, 1978.

John E. Juergensmeyer and James P. Leahy, both of Juergensmeyer, Zimmerman & Smith, of Elgin, for appellants.

John F. Early, of West Dundee, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant appeals from the order of the circuit court of Kane County which granted an injunction restraining the defendant from erecting a duplex apartment building in Riverside Manor No. 1, during the term of a restrictive covenant.

The defendant, Roy C. Wauchope, developed Riverside Manor No. 1 in 1957 and at that time set up certain restrictions running with the land as to the lots therein when the plat of subdivision was recorded. Among these restrictive covenants was the following:

"No lot shall be used except for residential purposes. No buildings shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling and a private garage for not more than three cars.

These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part."

During the years between 1957 and 1977 Wauchope had purchased farm property in the area immediately surrounding the subdivision, some of which was developed by him as Riverside Manor No. 2 and some of which was sold to other developers for commercial purposes. Sometime

after Riverside Manor No. 1 was developed, State Route 31, which adjoins the western boundary of the subdivision, was changed from a two-lane to a four-lane highway and the Northwest Tollway was built, just to the north of the subdivision. A Ramada Inn was also built nearby on a tract of land between the subdivision and State Route 31, the northwest corner of Riverside Manor No. 1 being across the frontage road from the Ramada Inn. Lots 18, 19 and 20, still owned by Wauchope and undeveloped, lie in the northwest corner and run north and south and to the west of Lot 18. Across the frontage road, is the service area or "backyard" of the Ramada Inn. Wauchope testified he had never been able to sell these 3 lots as single family residential lots. The land surrounding Riverside Manor No. 1, mostly owned at one time by Wauchope, not however including the Ramada Inn property, has been sold by Wauchope to other developers or commercial institutions. Surrounding the subdivision in various directions are located a trailer camp, a Holiday Inn, a McGraw Edison manufacturing building, the campus and dormitories of Judson College and a building housing the National Federation of High School Athletic Associations, all of these being commercially zoned and on land sold by the defendant, Wauchope, to others for development. The defendant conceded that these tracts were all sold without restrictions.

The plaintiffs testified that when they bought their lots in Riverside Manor they were informed of and relied on the single-family restriction and it was an inducement for their purchases.

In the spring of 1977, the defendant began laying the foundation for a building on Lot 18 which by a sign announced it would be a duplex apartment building. Previous to this the city council of Elgin had rezoned Lots 18, 19 and 20 to allow such occupancy, which change the plaintiffs had opposed. The plaintiffs then filed a complaint for injunction to enjoin the defendant from constructing the duplex apartment building in violation of the restrictive covenant set out above. After hearing testimony and viewing exhibits submitted in the case, the trial court granted a permanent injunction restraining the defendant from building any structure on Lots 18, 19 or 20, other than a one-family residence. This appeal followed.

Disregarding the argumentative form in which the defendant has framed the issues under "Points and Authorities" in his brief, we will discuss the contentions actually raised in his argument, as follows:

(1) That the character of the surrounding area has so changed that the original purpose of the restrictive covenant can no longer be achieved by its enforcement, therefore an injunction should not be granted to enforce it.

(2) That the relative injury or inconvenience to the plaintiffs in this

case would be so slight and the damage to the defendant so great by enforcing the restriction, that a court of equity in balancing the equities should not enforce the covenant.

(3) That the burden is on the plaintiffs to show irreparable harm and an injunction should not be granted where the great majority of the public affected favors the change which the injunction would prevent.

(4) He who seeks equity should do equity and the defendant should have been allowed to show that one of the plaintiffs occasionally kept cement trucks in his driveway, which is not in keeping with a high quality residential neighborhood and another plaintiff had offered to purchase a duplex apartment in Riverside Manor No. 2, which had no restrictive covenant against such a building, and he should be estopped thereby to seek this injunction.

■■ We disregard as an issue the general statement in the brief that "All doubts and ambiguities should be resolved in favor of natural rights and against restrictions and limitations on the use of property." While this generalization may be accepted as a broad statement of principle, it cannot be used to ignore or override the specific language of a restrictive covenant, otherwise such restrictions would be meaningless.

We consider first the contention of the defendant that the character of the surrounding area has so changed as to render the restriction precluding the building of any structures, other than a single-family residence, ineffective to accomplish its original aims. The defendant in his brief suggests that the "object" of this restriction was to promote peace, tranquility and a low volume of traffic and population density and to attract other single family home owners. This, the defendant argues, can no longer be accomplished by enforcing the restriction because it would merely result in the three lots in question remaining vacant, thus lacking the shield from surrounding commercial or higher density occupancies which might otherwise be provided by the duplex buildings. If, on the other hand, the duplexes were built, the defendant argues they would act as a shield or "buffer" zone from nearby, less pleasing prospects.

The most immediate, less pleasing prospect, from the standpoint of Lot 18 would be that of the back door of the Ramada Inn, but there was no testimony from anyone that this was a sight which was actually bothering any of the present residents of Riverside Manor No. 1. The owner of the lot nearest to the Ramada Inn, Gerald Moeller, testified he had recently bought this property for $77,000 and that he was not bothered by the nearness to the Ramada Inn building, possibly because of a berm or ridge which partly obscured the rear entrance of the inn from his view. No one else testified that he himself was bothered by the presence of the Ramada Inn. There was testimony that certain commercial enterprises could be seen from some of the lots in other directions but as to any "buffer" effect

that the proposed duplex apartment buildings would have is concerned, it appears that this effect, if any, would be negligible so far as the Ramada Inn is concerned and, of course, nonexistent as to other commercial enterprises to the north, east or south. We do not think that the buffering effect of the proposed buildings would be of much consequence so far as the residents of Riverside Manor No. 1 are concerned, as compared with single family residences, or even leaving the lots vacant with the present poplar trees on them.

While the commercial developments described by the defendant in his brief as having sprung up during the intervening years are cited by him as having gone beyond the reach of the restrictive covenant and rendered it useless, it seems only fair to point out, as the plaintiffs do, that not only would the proposed duplex buildings have little effect in diminishing the evidence of a commercial presence in other directions, but much of the land which these other enterprises are built on, was sold to the owner or developer by the defendant Wauchope, himself, without restrictions as to use or density. To the extent that enterprises occupying such land might be thought to encroach on the subdivision, the defendant is partly responsible for this change, which he has noted in the perimeter of Riverside Manor No. 1. It is hardly a persuasive argument to show that there have been vast changes, when the defendant himself has assisted in bringing about these changes for his own benefit, thus helping to create the pattern he now discerns as excusing him from further obligation under the restrictive covenant. There can be no objection to the defendant buying and selling land without restrictions attached, outside of the subdivision, but it is a rather different thing for him to use the "march of progress" which he is partly responsible for, as a reason for dispensing with the rules as they would apply to his marginal lots within the subdivision itself. From the testimony at trial, it appears that the restrictive covenant with regard to single-family residences was an inducement for persons to buy the lots in Riverside Manor No. 1. What was an asset to the defendant in the beginning could reasonably be regarded as still being an asset to the plaintiffs at this time. And, if the various transactions of the defendant Wauchope have helped to make it less so, the defendant can hardly be heard to make such an argument against his own covenantees.

The defendant also contends that the trial court erred in disregarding the principle that a court of equity will not generally restrain a use of property where to grant such a relief would be a great handicap on the property owner and of little or no benefit to the complainant.

This argument requires no extended comment. We are dealing here with a restrictive covenant originated by the defendant himself. A covenant such as this, running with the land, is not a matter which

requires the nice balancing of the equities that might be required in an ordinary nuisance case or a request for rezoning or the enforcement of an ordinary business contract. Restrictive covenants concerning the use of land are in a somewhat different category and unless against public policy, or the principles of waiver or estoppel operate, their violation will generally be enjoined by a court of equity. (*Cuneo v. Chicago Title & Trust Co.* (1929), 337 Ill. 589; *Punzak v. DeLano* (1957), 11 Ill. 2d 117; *Paschen v. Pashkow* (1965), 63 Ill. App. 2d 56; *Taubert v. Fluegel* (1970), 122 Ill. App. 2d 298; *Tones, Inc. v. La Salle National Bank* (1975), 34 Ill. App. 3d 236.) In commenting on this point the court, in the *Paschen* case quoted from the earlier supreme court case of *Hartman v. Wells* (1912), 257 Ill. 167, as follows:

> " 'The evidence as to whether appellant's property was damaged by the violation of the agreement was conflicting, but we do not think that was a material question. In Consolidated Coal Co. v. Schmisseur, 135 Ill. 371, the court, in discussing the enforcement of negative covenants in courts of equity, said it was well settled that equity would entertain bills for injunctions to prevent their breach although the breach would cause no substantial injury or although the damages might be recoverable in an action at law. "This is upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such conditions and covenants as he pleases touching the mode of enjoyment and use of the land. As said in Steward v. Winters, 4 Sandf Ch 587: 'He is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition.' (Hill v. Miller, 3 Paige, 254; Macher v. Foundling Hospital, 1 Ver & B 188; High on Injunctions, 1142.) In this latter class of cases the court proceeds upon the ground that the grantor or lessor having expressly stipulated that the grantee or lessee shall not do the particular thing complained of, the latter is bound to refrain, and the former is not required to submit to the opinions of others as to whether he will or will not suffer substantial injury." * * *.' " 63 Ill. App. 2d 56, 66-67.

The person in whose favor the restriction runs is therefore *prima facie* entitled to have it enforced by a court of equity. As was said by this court in *Tones, Inc. v. La Salle National Bank* (1975), 34 Ill. App. 3d 236, 242:

> "The burden of proving that there has been a change in circumstances affecting the validity of the restriction so that the object of the restriction can no longer be accomplished and therefore may be removed without unjustly injuring neighboring

properties is on the party who seeks relief from the enforcement of the restriction. *Punzak v. DeLano*, 11 Ill. 2d 117, 121 (1957)."

In the case before us there was no showing of any change in the subdivision itself which would render the restriction ineffective and whatever the benefits of the restrictions were originally to the grantees who are the beneficiaries thereof, those benefits still apply. The defendant has not shown merely because his remaining lots would be more saleable with the restriction removed that the equities are with him in doing so. We believe this case is similar to *Burden v. Lobdell* (1968), 93 Ill. App. 2d 476. There, too, it was alleged that due to noise and traffic congestion emanating from business and commercial establishments nearby the character of the neighborhood in question had materially changed and the original restrictions were no longer of any value to the property. After analyzing the defendants' arguments contending that their restrictive covenant was no longer relevant, the court rejected that argument, saying:

"The allegations that the surrounding area has grown in population, that bordering highways have been widened, developed with business and commercial establishments, including a shopping center, and carry more traffic, do not show a change in the character of the neighborhood to an extent which would make the enforcement of the restrictions in Glendale Subdivision serve no useful purpose. * * * The conditions alleged could, by reasonable inference, well have been contemplated at the time the restrictions were placed on the subdivision." 93 Ill. App. 2d 476, 483.

In the course of that opinion this court referred to the annotation in 4 A.L.R. 2d 1111, 1114 (1949), as follows:

" '* * * While restrictions in deeds are not favored in law, they will be construed as found, and it is a primary rule that a building restriction will be upheld wherever it remains of substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objections. Consequently, for a change in neighborhood conditions to relieve against enforcement of a restriction and especially to constitute a sufficient ground for cancelation or modification of a restriction, such change must be so radical and complete as to render the restriction unreasonable, confiscatory, and discriminatory, or as practically to destroy the purpose for which the restriction was originally imposed, relief from an onerous building restriction because of a change in the character of the neighborhood being granted only if it can be done without causing damage to others who have purchased their property in the restricted area in reliance on the restriction * * *.' " 93 Ill. App. 2d 476, 482.

We think the defendant has made no showing here either as to such

radical change or *any* change in the subdivision itself such as to destroy the original purpose of the restriction or such as to indicate that the restriction has no value to the complainants who seek to enforce it. The defendant, therefore, has not met his burden whereby he could relieve himself of compliance with that restriction. Moreover, his burden is even heavier than in the usual case because it is the defendant's own restriction which he is attempting to discard.

The defendant further argues that the burden of proof is on the plaintiffs to show irreparable harm to them because in this case the "great majority of the public affected in the same manner as the plaintiffs" favor lifting the restriction. The defendant makes an obviously false assumption in this argument. He fails to distinguish between a case involving the parties to a restrictive covenant from the case where a public body or the public generally is involved and cites the latter type of case which does not in any way involve a restrictive covenant (*viz., G. H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1). There is not, in the sense of the *Sternberg* case, a "public" or "public body" in the case before us. The lot owners are all covenantees and potential parties. That the majority do not insist on their rights under the covenant does not operate to deprive those who do of *their* rights. This case does not involve the "public" or a "public body" and a restrictive covenant cannot be construed according to the results of a local election or plebiscite as to whether or not it should be enforced. It is individual and specific and intended to be enforced by anyone who entered into it in good faith and wishes to retain its benefits for his own property. We find this an unpersuasive argument.

Lastly, the defendant argues that the trial court erred in not permitting him to show that one of the plaintiffs at times kept a cement mixer in his driveway and therefore (literally, perhaps) did not come into court with clean hands, since he was violating good residential standards. Another plaintiff is said to be estopped to invoke the covenant because he allegedly had at one time offered to buy or expressed interest in buying a duplex apartment building in the defendant's adjoining subdivision, Riverside Manor No. 2. Thus, it is contended, he was willing to tolerate duplexes and therefore should not be heard to complain of the proposed one in his own subdivision.

■▮ We think the court was correct in rejecting the proffered evidence in both instances. The first instance was entirely irrelevant to the issue raised by the single-family restriction. In the second instance, the allegation was denied by the resident in question but, in any event, it was not germane to the issue here, since there was no restrictive covenant as to single-family residences in Riverside Manor No. 2 and therefore there was no similarity which would be significant for purposes of estoppel. We see no reason for the court to go into these irrelevant matters.

Considering the background and circumstances of this case, we see no

reason why a court of equity should relieve the defendant from his own restrictive covenant and the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.