JOHN L. WIER *et al.*, Plaintiffs-Appellees, *v.* SHELDON ISENBERG *et al.*, Defendants-Appellants.

Second District   No. 80-348

Opinion filed April 30, 1981.

Paul T. Kalinich, of Kalinich, McCluskey & Mehlin, of Glen Ellyn, for appellants.

John F. Pacocha, of Lisle, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiffs, John and Elizabeth Wier, and others, brought this action in the circuit court of Du Page County to enforce a subdivision covenant restricting the use of the property owned by defendants Sheldon and Raye Isenberg to residential purposes. Defendants appeal from the judgment of the trial court which enjoined them from the practice of psychotherapy and social work from their home except on an emergency

basis, asserting that (1) their practice of individual and family psychotherapy from their home, which is also used for residential purposes, does not violate a protective covenant limiting the property to residential use; and (2) that the trial court erred in denying their motion for a change of judge.

The record discloses that on January 7, 1958, a "Declaration of Protective Land Restrictions" encompassing the subdivision in which all of the parties reside was recorded in the office of the recorder of deeds of Du Page County, and it provided in relevant part:

"Now, therefore, the undersigned River Haven Estates, Inc., an Illinois corporation, hereby declares that the above described premises shall be subject to the following restrictions: and these restrictions shall be binding and enforceable against the above described premises;

1. *Land use and building type.* No lot shall be used except for single residential purposes. No building shall be erected, altered, placed or permitted to remain on any land other than one attached single family dwelling, not to exceed two and one-half stories in height, and a private garage for not more than two cars. A single family dwelling is hereby defined to be a residential structure designed and used for one family, consisting of a number of individuals living in the premises as a single house-keeping unit.
* * *

5. *Signs.* No sign of any kind shall be displayed to the public view on any lot except one professional sign of not more than one square foot * * *."

On August 23, 1977, defendants took title to a lot within the subdivision by a deed which recited that it was "subject to * * * restrictions of record, if any." Defendants are licensed to practice individual and family psychotherapy, and informed their neighbors (some of whom are plaintiffs in this suit) of their intention to conduct their practice from their home. To accommodate their patients, defendants constructed a sidewalk in 1978 leading from their driveway to a pre-existing entrance to the basement or lower level in which they meet with their clients. The basement appears to be a regular part of the house and defendants' children are permitted to use it, even when clients are present, but they may not enter the room being used by the client. Defendants depreciate approximately one-half of the house because of this use for Federal income tax purposes, and receive approximately one-half of their income from counseling carried out in the home.

Sheldon Isenberg sees 18 to 20 clients for a total of 18 to 20 hours each week in the home. Raye Isenberg initially saw five clients for 5 hours each week and her professional activities in the home increased to seven clients

for 7 hours a week after 1978. Neither defendant sees clients after 10 p.m. on weekdays nor at any time on weekends. The greatest number of clients present at any one time is a mother, father, and their children, and no nonfamily group activities are conducted. No one with a criminal record, no hard-core drug users, or who might endanger others is taken as a referral. Although parking for their clients is available on the street, it is not needed since the driveway to the home accommodates six cars. There was testimony, however, that since defendants moved in traffic has increased and some cars used neighbors' driveways in order to turn around. With the exception of two clients who have mistaken a neighbor's house for that of defendants and were seen by the neighbor in his yard, there have been no disturbances resulting from defendants' professional activities. While defendants usually worked alone, a graduate student had an internship with them for a short time.

We consider first whether defendants' professional use of the premises is a violation of the restrictive covenant entitling plaintiffs to injunctive relief.

Private covenants restricting the use of real estate to residential purposes have long been considered to be valid and enforceable in Illinois (*N. H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 240 N.E.2d 9). The person in whose favor a restrictive covenant runs is *prima facie* entitled to its enforcement (*Cordogan v. Union National Bank* (1978), 64 Ill. App. 3d 248, 380 N.E.2d 1194), and is not required to show an injury since the mere breach of the covenant is sufficient grounds to enjoin its violation (*Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 393 N.E.2d 646). A restrictive covenant will be enforced unless there has been such a change in the character and environment of the property that the objectives of the restrictions cannot be accomplished by their enforcement or, if by such change it would be unreasonable or oppressive to enforce them. (*Cordogan v. Union National Bank*; *Boschelli v. Villa Park Trust & Savings Bank* (1974), 23 Ill. App. 3d 82, 318 N.E.2d 527.) While a change in the character of the surrounding property might preclude injunctive relief, a court does not balance the equities as it would in an ordinary nuisance case or in a request for rezoning. Restrictive covenants are in a different class and unless against public policy or the principles of waiver or estoppel apply, their violation will generally be enjoined. (*Cordogan v. Union National Bank.*) The burden is on the party seeking relief from the enforcement of the restriction to establish that there has been a change in circumstances affecting the validity of the restriction so that its object can no longer be accomplished and therefore it can be removed without unjustly injuring neighboring property. *Cordogan v. Union National Bank*; *Boschelli v. Villa Park Trust & Savings Bank*.

In the present case, defendants do not appear to argue that the character of the neighborhood has substantially changed, but assert that their use of the house is not a violation of the covenant. In interpreting a covenant, the general rule has been to construe its language strictly (*Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 393 N.E.2d 646), and all doubts or ambiguities are to be resolved in favor of natural rights and against restrictions on the use of property. (*Cordogan v. Union National Bank of Elgin* (1978), 64 Ill. App. 3d 248, 380 N.E.2d 1194.) This rule will not be applied, however, to ignore or override the specific language or obvious purpose of the restriction. *Freehling v. Development Management Group, Inc.*; *Cordogan v. Union National Bank.*

Defendants essentially argue that since the covenant does not expressly prohibit lot owners from engaging in those professions which are traditionally practiced from the home, it should not be construed to foreclose them from carrying on their counseling services from it, a practice which they assert is most effective in a family setting. They contend that (1) social work services have been held to be customarily incidental to residential uses, citing *County of Du Page v. Elliot* (1980), 85 Ill. App. 3d 225, 406 N.E.2d 592; (2) their house is a single-family residence both as to design and use; (3) since the covenant permits the display of a small professional sign, it recognized a custom of practicing professions from the home; and (4) the use of their property is not so intense as to adversely affect the neighborhood as compared to the benefits derived by the community.

It should be noted initially that defendants' reliance on *County of Du Page v. Elliot* is misplaced. That case was concerned with the interpretation of a zoning ordinance which by its terms permitted accessory uses of the subject property customarily incidental to residential use and thus is inapplicable here.

While defendants' home has not been substantially altered and remains a single-family residence in both design and accompanying use, the physical appearance of the home is not the sole criterion for determining whether a covenant restricting property to "residential purposes" precludes the practice of a profession within the residence. (*N. H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 240 N.E.2d 9.) It has been held that such a covenant is violated by engaging in a profession from the home, even if there is no change in the structure. (*Boschelli v. Villa Park Trust & Savings Bank* (1974), 23 Ill. App. 3d 82, 318 N.E.2d 527.) Rather, it is the activity conducted within the home that is the fundamental factor to be considered in determining whether there is a violation of such a restrictive covenant.

In *N. H. Engle & Sons, Inc. v. Laurich*, this court considered that

property restricted in use for "residential purposes only" precluded a doctor from conducting his practice from his home. The doctor had constructed a 4800-square-foot parking lot to accommodate 14 cars, devoted a separate 615-square-foot area of the house for an office and examination rooms, and saw about 30 patients each day. Although the court noted that the occasional practice of medicine from the home in an emergency would not violate the covenant, it reasoned that:

> "When a professional man pursues an occupation in his home in which it is necessary that patients, clients or patrons call at his home for the purpose of obtaining treatment, or similar activity, it then becomes a non-residential use, and is contrary to a restrictive covenant of the type which was contained in the deed in the instant case. The purpose of the covenant was to eliminate traffic, noise and confusion in the neighborhood so it remains a residential neighborhood. The use by a doctor of his home for such purposes is clearly one type of use which was designed to be prohibited by the clause. It is understandable, that not all uses of a home for nonresidential purposes would be violative of the covenant referred to. An illustration of a use which apparently would not be a violation of the covenant, would be the use by an author of a portion of his home for the business of the author in the process of writing, etc. It is when the business or profession requires marked changes or activity outside of the residence itself in the form of noise, or displays, or patients entering and leaving in substantial numbers, that the use becomes a violation of the covenant." 98 Ill. App. 2d 18, 26-27, 240 N.E.2d 9, 13.

■■ In the present case, while it is apparent that the activity outside defendants' residence was not as marked as in *Laurich*, the occupation engaged in by them is one in which on a regular basis "it is necessary that patients, clients, or patrons call at [their] home for the purpose of obtaining treatment * * *" (*N. H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 26-27, 240 N.E.2d 9, 13), and their use of it cannot reasonably be considered limited to residential purposes.

■■ Defendants also contend that since the covenant permits display of professional signs, it recognized the practice of professions which traditionally are engaged in from a home. While it is true that a restrictive covenant is to be strictly construed and all ambiguities are to be resolved in favor of the free use of property, to adopt the interpretation urged by defendants would require us to ignore the specific language of the covenant that "[n]o lot shall be used except for single residential purposes" and would render the restriction meaningless. The trial court correctly considered that the purpose of permitting a small professional sign was to aid in locating professional assistance in an emergency.

Defendants also assert that their use of the property is not so intense as to adversely affect the neighborhood in light of the benefits derived by the community. They note that there is no evidence that their desire to combine residential living with their work has created a situation noxious to single-family living in the subdivision any more than do other neighborhood activities such as Youth for Christ meetings, a piano teacher, a premium merchant, an architect, a family that gives baton lessons, a woman who provides electrolysis treatment, or the executive who has an office in his home. They argue that it is unreasonable and oppressive to apply the covenant to bar their limited activity.

■■ We note initially that since plaintiffs are not required to show injury in order to enforce a breach of the covenant (*Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 393 N.E.2d 646), defendants' contention that their use of the property has not adversely affected the neighborhood is of little force. To the extent they argue that enforcement of the covenant would be oppressive in light of other uses made of subdivision property, they have not carried their burden of showing a significant change in the character of the surrounding area so that the purpose of the restriction can no longer be accomplished and thus the restriction could be removed without unjustly injuring neighboring properties. See *Cordogan v. Union National Bank of Elgin* (1978), 64 Ill. App. 3d 248, 380 N.E.2d 1194; and *N. H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 240 N.E.2d 9.

■■ Defendants also refer to a City of Naperville zoning ordinance which would permit their professional practice and to the testimony of the Director of Community Development of Naperville that they were in compliance with the ordinance. Defendants correctly concede, however, that the ordinance does not control the more restrictive terms of the covenant (*Boschelli v. Villa Park Trust & Savings Bank* (1974), 23 Ill. App. 3d 82, 318 N.E.2d 527), and thus these factors are immaterial to a resolution of whether their use of the property violates the covenant.

We consider next whether the trial court erred in denying defendants' petition for change of judge.

Plaintiffs filed their petition for injunctive relief on November 13, 1978; defendants answered, and the parties conducted discovery procedures in due course thereafter. The case was assigned to Judge Robert A. Nolan and on March 16, 1979, he denied defendants' motion to add as parties plaintiff all of the other owners of property in the subdivision. On July 17, 1979, Judge Nolan conducted a pretrial conference and entered an order in which he defined the issues to be tried and also recognized the stipulations of the parties to the admissions of documentary evidence.

■■ On July 25, 1979, defendants presented their motion for change of judge supported by their affidavit that "we are unable to obtain an

impartial trial free of prejudice of Honorable Robert Nolan, the judge, to whom this case has been assigned." The trial court granted defendants' second motion for substitution of its attorneys and denied the petition for change of judge "as a matter of right." A party is entitled to a change of judge as of right upon filing a verified petition prior to the time the court has ruled upon a substantial issue in the case. (Ill. Rev. Stat. 1979, ch. 110, par. 503.) If the petition is timely filed and in proper form, a party has an absolute right to a change of venue for prejudice of the trial judge. (*In re Estate of Roselli* (1979), 70 Ill. App. 3d 116, 388 N.E.2d 87.) If, however, the grounds for granting the petition arise after a hearing has begun, it must present reasons for the change (*American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 371 N.E.2d 232), and will be granted then only in the exercise of sound discretion of the court. *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 362 N.E.2d 33.

■■ In the present case the trial court had ruled upon substantial issues, but defendants' petition merely alleged generally that the trial judge was prejudiced against defendants and did not, as required by section 503 "set forth the cause of the application." In these circumstances, the allegations were insufficient to support a charge of prejudice, and the motion was thus properly denied. (*Templeton v. First National Bank of Nashville.*) Such a motion may be appropriate after a pretrial conference if the court has expressed an opinion as to the facts, but defendants did not allege that the trial judge did so here. See *Fennema v. Joyce* (1972), 6 Ill. App. 3d 108, 111, 285 N.E.2d 156, 158.

For these reasons the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and LINDBERG, J., concur.