THE 400 CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. JOHN E. GEDO *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—87—3390

Opinion filed May 11, 1989.—Rehearing denied June 22, 1989.

McMORROW, J., dissenting

James L. Marovitz, Kathryn E. Korn, and Mercedes A. Laing, all of Sidley & Austin, of Chicago, for appellants.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This case involves a declaratory judgment that floors 8 through 39 of a multi-use high-rise building located at 400 East Randolph Street in Chicago were restricted to residential use only. The defendants are doctors who own condominium units on floors 8 through 39 and use those units to render professional services. The plaintiff, 400 Condominium Association (Association), filed a complaint against the doctors alleging that their business use of the units violated section 21 of the "Declaration of Condominium Ownership," which provides that "[u]nits located on Levels one through seven and Level forty may be used for purposes other than housing and related common purposes." The trial court found that the only reasonable interpretation of section 21 is that it restricts the use of units on levels 8 through 39 to residential use only. The doctors have appealed, contending that the trial court erred in interpreting section 21 as a restriction on the use of their units.

The condominium documents pertinent to this appeal are the "Declaration of Condominium Ownership" (Declaration) and the "Articles of Incorporation of the Association" (Articles). The Declaration states that there has been formed an Association which "shall be the governing body for all of the Unit Owners, for the *** administration and operation of the Property, as provided in the [Condominium Property] Act, this Declaration and the By-Laws of the Association." Paragraph 5 of the Articles provides:

"The purpose or purposes for which the corporation is organized are: To maintain, operate and manage a condominium residential building and improvements situated at 400 East Randolph Street, Chicago, Illinois."

Second, section 21 of the Declaration provides as follows:

"**Use and occupancy restrictions.** Units located on Levels one through seven and Level forty may be used for purposes other than housing and related common purposes."

The Association, taking the position that these two provisions served to restrict levels 8 through 39 to residential use only, filed a three-count amended complaint against the defendant doctors. Count I alleged that the doctors' business use of condominium units on levels 8 through 39 constituted a violation of the Declaration and sought an injunction, an involuntary sale of the doctors' units and costs and at-

torney fees. Count II alleged that the business use of the units in question constituted a nuisance. Count III requested a declaratory judgment that section 21 of the Declaration restricted the units on levels 8 through 39 to residential use. Following a hearing on the parties' cross-motions for summary judgment, the trial court found that "the only reasonable construction of paragraph 21 of the Declaration of Condominium is a restrictive covenant which favors residential use only on floor levels 8 through 39." The court accordingly granted the Association's motion for summary judgment on count III and denied the doctors' cross-motion on that count. The trial court granted the doctors' motion for summary judgment on the common-law nuisance claim in count II, but denied their motion for summary judgment on count I. The doctors have appealed, contending that the trial court erred in interpreting section 21 of the Declaration as a use restriction.

■■ ■ Because restrictions on the free use of property are disfavored (*Cimino v. Dill* (1982), 108 Ill. App. 3d 782, 786, 439 N.E.2d 980), restrictive covenants are to be strictly construed and will be enforced only if they are reasonable, clear and definite (*Lakeland Property Owners Association v. Larson* (1984), 121 Ill. App. 3d 805, 810, 459 N.E.2d 1164). Any doubts or ambiguities in the language of the covenant will be resolved against the restriction. (*Lakeland*, 121 Ill. App. 3d 805, 459 N.E.2d 1164.) However, a covenant restricting the use of property for residential purposes is valid and will be enforced where the intent of the drafter to impose the restriction is clearly manifested. (*Cimino*, 108 Ill. App. 3d 782, 439 N.E.2d 980.) Strict construction should not be used to destroy the restriction's purpose or to defeat the obvious intention of the parties, even though it is not precisely expressed. *Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 248, 393 N.E.2d 646.

The parties agree on both the above-stated principles of law and the pertinent facts. Their disagreement extends solely to the proper interpretation of section 21 of the Declaration. In effect, the doctors maintain that in order to sufficiently constitute a use restriction, the section must be couched in negative or prohibitory terms and must expressly mention floors 8 through 39. Although the doctors have cited several cases stating that a use restriction must be clear and unambiguous, they have failed to cite any authority to support their contention that the restriction must in every event be couched in negative or prohibitory terms in order to be valid.

■■■ We believe that the proper test of interpretation is whether the intent to set forth a use restriction is clearly and unambiguously

expressed, regardless of the particular form of the language employed. In the case at bar, paragraph 5 of the Association's Articles of Incorporation states the Association's purpose as the organization and incorporation of a "residential" condominium building. Section 21 of the Declaration, entitled "Use and occupancy restrictions," states that floors 1 through 7 and floor 40 may be used for nonresidential purposes. Read together, these provisions can only be interpreted as limiting nonresidential uses to floors 1 through 7 and 40 and correspondingly prohibiting such uses on floors 8 through 39. The doctors have failed to suggest any other possible interpretation of section 21, and if we accept their position that it does not impose a use restriction on floors 8 through 39, we would have to conclude that the section is meaningless. It appears clear that this would defeat the intent of the drafters as expressed in both paragraph 5 of the Articles of Incorporation and section 21 of the Declaration to create a residential condominium building with limited space for nonresidential uses.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON, J., concurs.

JUSTICE McMORROW, dissenting:

Applying the undisputed principles governing the law on property use restrictions, I cannot agree that section 21 constitutes a restriction on the use of units on floors 8 through 39. Illinois jurisprudence is clear that uses are permitted unless clearly prohibited. A restriction must be clearly stated, and any doubts must be resolved in favor of permitting the free use of property and against any limitation thereon. Section 21 contains no prohibition, limitation or mandate concerning the uses of units on floors 8 through 39, or for that matter, of floors 1 through 7 and 40. It merely *permits* use of floors 1 through 7 and 40 for "purposes other than housing and related common purposes." Because no restriction is stated in section 21, one should not be read into or inferred from it. I submit that the interpretation adopted by the majority, which infers an unstated restriction, is contrary to the long-standing legal principles all parties agree are applicable.

The majority adopts the Association's argument that a use restriction need not be phrased in negative or prohibitory terms and that "the doctors have failed to cite any authority in support of their contention that a restriction must, in every event, be couched in negative

or prohibitory terms to be valid and must expressly mention floors 8 through 39." I believe that the majority and the Association have distorted the doctors' argument. My understanding of their position is, simply stated, that irrespective of the particular words used, a restriction—which, parenthetically, is by definition a negative term—must explicitly express some type of limitation.

Indeed, in every case cited and relied upon by the Association, the restriction found to be valid and enforceable contained the very type of express prohibitory or limiting language the majority holds is unnecessary. *E.g., Wier v. Isenberg* (1981), 95 Ill. App. 3d 839, 841, 420 N.E.2d 780 ("no lot shall be used except for single residential purposes[;] [n]o building shall be erected, altered, placed or permitted to remain on any land other than one attached single family dwelling *** hereby defined to be a residential structure designed and used for one family"); *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 659, 440 N.E.2d 1073 (although the declaration reserved the right of the partnership-owner of 80 units in a condominium to show and promote the common areas to "prospective purchaser of Dwelling Units" and the right to place and maintain model apartments, sales offices and advertising signs on the premises, it did not confer the right to conduct similar activities for rental purposes where other language in the declaration expressly stated "no industry, business, trade, occupation or profession of any kind shall be *** permitted on any part of the Premises and no *** 'For Rent' signs or any window display advertising be maintained or permitted on any part thereof"); *Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 245, 393 N.E.2d 646 ("no part of any building shall be placed upon or over said property east of said building line"); *Cordogan v. Union National Bank* (1978), 64 Ill. App. 3d 248, 249, 380 N.E.2d 1194 ("[n]o lot shall be used except for residential purposes *** [and] [n]o buildings shall be erected *** other than one detached single family dwelling and a private garage"); *Boschelli v. Villa Park Trust & Savings Bank* (1974), 23 Ill. App. 3d 82, 84-85, 318 N.E.2d 527 ("the *** lots *** shall be residential lots *** [and] no structure other than a detached single family dwelling *** shall be erected or placed on any residential lot"); *N.H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 20, 240 N.E.2d 9 (the property "shall be used, improved and occupied for residence purposes only"). In my view, the cases relied upon by the Association, each of which contained express prohibitory and/or limiting language, not only do not stand for the proposition advanced by the Association and adopted by the majority but, rather, support the doc-

tors' position. The Association has failed to cite any authority for its contention that because of the absence of explicit language allowing nonresidential use of floors 8 through 39, section 21 must be interpreted to allow "only"—a word used repeatedly by the Association but which does not appear in section 21—residential use of those floors.

Furthermore, contrary to the majority's assertion, the doctors have cited authorities directly supportive of their position. The recently decided case of *Lake Holiday Property Owners' Association v. Arenkill* (1988), 172 Ill. App. 3d 892, 527 N.E.2d 167, presented a factual situation closely analogous to the one before us. More importantly, the ultimate issue in that case is essentially identical to the issue in the instant case. In *Lake Holiday*, the recorded plat of the subdivision indicated that the lots at issue were designated for "business concession" and the contract of sale to the defendants contained a covenant for commercial use of the land. However, at the time of the sale, the sellers represented to the defendants that the lots could be used either residentially or commercially. After reviewing the legal principles applicable to property-use restrictions, the court in *Lake Holiday* stated,

"[w]hile the recorded documents dictate a business use *may* be made of the property, that use was not indicated as an exclusive one. The covenant does not explicitly restrict the use of the land to business purposes only and does not constitute a limitation on the free use of the land generally. Residential use of the land has not been expressly prohibited, and we will not impose such a limitation upon the use of the real estate." (Emphasis added.) (172 Ill. App. 3d at 894.)

Thus, the court in *Lake Holiday* reaffirmed the long-standing tenet that a purported restriction on the use of property must be clear and definite to be enforceable.

We also find other authority cited by the doctors supportive of their position. In *La Salle National Bank v. Village of Palatine* (1968), 92 Ill. App. 2d 327, 332, 236 N.E.2d 1, the court held that language specifying that the "[a]bove described lots shall be known as business lots" did not constitute a prohibition of residential use of the property. In *Griffin v. Pence* (1963), 39 Ill. App. 2d 31, 187 N.E.2d 545 (abstract of opinion), a provision stating that "no dwelling should be constructed on any lot at cost of less than $30,000 and that ground floor area of main structure should not be less than 1600 square feet" was held not subject to an interpretation which would prohibit the construction of an eight-unit apartment building or to require that

each of the eight units be considered a "dwelling" and thereby contain not less than 1,600 square feet or cost not less than $30,000.

Similarly, in the case before us, while section 21 allows the non-residential use of certain specified floors, it does not state that all other floors are to be used exclusively for residential purposes, and I do not believe that under the applicable law any such restriction should be read into, inferred or extracted from the clause as it is written. To paraphrase the holding in *Griffin*, had it been intended that floors 8 through 39 not be used for any purpose except residential housing, it would have been a simple matter for the drafters to state that restriction in explicit language. The clearest expression of a use restriction of floors 8 through 39 would be an explicit prohibition of nonresidential use of those floors. Indeed, this is precisely the type of language used in article 5, section 1, of the bylaws (use and occupancy restrictions), which provides, *inter alia*, that "no owner of a unit on Levels 8 through 39, inclusive, shall display, hang, store or use any sign outside his Unit." However, in response to the majority, it is my opinion that if a valid restriction had been intended, it could have been imposed even without explicit reference to floors 8 through 39 by merely inserting the word "only" to the existing language of section 21, *e.g.*, "*only* floors 1 through 7 and 40 may be used for purposes other than housing." The majority's construction of section 21 necessarily requires the insertion of such language. However, because legal precedent prohibits it, I would decline to rewrite section 21 to insert language not contained in it so as to impose a restriction which is not clear or definite.

I am not persuaded otherwise by the majority's assertion that if the interpretation urged by the Association is not adopted, section 21 would be rendered meaningless. The Association argues that "common sense dictates that the designation of specific floors for commercial or for uses 'other than housing and related common purposes' was intended so that services would be available to the building's residents." As this argument itself suggests, it is entirely reasonable that section 21 was simply intended as a means by which to provide for and situate those services and facilities within close proximity to one another for the convenience and common use of all unit owners rather than intended as a use limitation. I reiterate that the allowance of commercial use of certain designated floors should not, in my opinion, be construed as an inferential proscription against private business use of units on other nonspecified floors.

I believe that the language of section 21, which is permissive in its terms and excludes any reference to the floors in dispute, fails to

satisfy the "clear and definite" test necessary to interpret or enforce it as a use restriction. I would therefore reverse the order of the trial court and direct that summary judgment be entered in the doctors' favor.

In the alternative, I would reverse the summary judgment and remand this cause for further proceedings on the correlative issues of the intention of the drafters of section 21 concerning the use of individual units in the building and the doctors' defenses of waiver and estoppel. Among the numerous documents in the record before us are copies of a sales contract executed in November 1975 by the seller, Nationwide Condominium Corporation (Nationwide), and a psychiatrist-purchaser. The contract contains 20 preprinted provisions followed by two typed paragraphs, the first of which states:

"21. SELLER warrants:

(1) That the agreement given pursuant to this contract and attached hereto as Exhibit A [the real estate sale contract] is a valid and binding act of the 400 Condominium Association ***.

(2) That the use of the subject premises as a residence and/or psychiatrists counseling room violates neither the zoning laws nor the condominium declaration presently applicable to the subject unit [unit 2505]."

Among the discovery documents was also a letter dated August 26, 1975, from Nationwide to Hyde Park Bank & Trust Company, relating to a different unit, Unit No. 1722, which states in pertinent part:

"This is to certify that the condominium unit we are selling to D. Clifton Wilkerson, M.D. and Mrs. Carolyn F. Wilkerson, his wife, known as No. 1722 of a building commonly known as 400 East Randolph, Chicago, is for business use as a medical office, and this transaction is therefore exempt from the Real Estate Settlement Procedures Act of 1974 and from Regulation 'X'.

We further certify that this business use does not conflict with the terms of the Condominium Declaration, articles of the [A]ssociation or by-laws, zoning, or other use restrictions applicable to this unit.

This statement is made to induce the Hyde Park Bank and Trust Company to make a first mortgage lein [sic] *** for the purchase of this condominium unit, and is being signed after consultation with our attorney."

Beneath the signature of the president of Nationwide is a statement

by and the signature of counsel for Nationwide.

In my view, these documents, executed by the seller and earlier purchasers of units between floors 8 and 39, appear to express an intention to permit the use of those units for the very purpose the doctors in this appeal have been using their units, *i.e.*, for the practice of psychiatry. Several other examples of the intent to permit use of units for either residential and/or psychiatric counseling offices are referred to in the answers to interrogatories.

Thus, at the very least, I would rule that section 21 is ambiguous and that there are genuine issues of material fact as to what uses of the individual units were contemplated and intended by the parties. As an alternative to reversal of the trial court's order and entry of summary judgment for the doctors, I would reverse and remand this cause for further proceedings.