HERITAGE STANDARD BANK AND TRUST COMPANY, n/k/a Standard Bank and Trust Company, as Trustee, *et al.*, Plaintiffs-Appellees, v. STEEL CITY NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—91—3191

Opinion filed August 27, 1992.

Edward P. Freud and Paula M. Carstensen, both of Ruff, Weidenaar & Reidy, Ltd., of Chicago, for appellants.

William R. Warnock and Thomas R. Schutt, both of Donovan & Olsen, of Chicago, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

The trial court entered an order granting a preliminary injunction which enjoined defendants from terminating a real estate contract pursuant to a notice of default from defendants to plaintiffs. On interlocutory appeal from that order, defendants contend that the trial court abused its discretion in issuing the injunction because plaintiffs failed to establish the elements necessary for issuance of preliminary injunctive relief.

The underlying litigation concerns a real estate contract entered into on August 12, 1986, for the sale and purchase of approximately 200 acres of land situated in unincorporated Palos Township in southwest Cook County, Illinois. The land had been zoned for a planned unit development (PUD) and is hereafter referred to as "Palos West."

Plaintiff Heritage Standard Bank & Trust Company is the trustee of land trust 3167 and the contract purchaser of Palos West. Plaintiff Orchard Hill Building Co., a general partnership, is the sole beneficiary of the land trust, and plaintiff Robert C. Gallagher is a partner in Orchard Hill Building Co., who holds the power of direction under the trust. Defendant Steel City National Bank, as trustee of land trust 2536, is the contract seller of Palos West. The other defendants are the First Cook Community Bank, the beneficiary of the land trust, and Michael Halikias, the chairman of the board of directors of First Cook Community Bank and guarantor of the obligations of the land trust under the real estate contract. We will generally refer to the parties collectively as plaintiffs and defendants.

On January 18, 1990, plaintiffs filed a five-count complaint alleging that defendants were in breach of the terms of the contract, a copy of which was attached to the complaint. Under the terms of the contract, plaintiffs agreed to purchase subdivided, improved, single-family residential lots from defendants at the price of between $35,000 and $40,000 per lot. The parties anticipated that when fully subdivided, the Palos West property would yield approximately 500 residential lots. Defendants were to convey a specified number of lots in seven annual stages, from December 24, 1986, through December 24, 1992. As each group of lots was conveyed, plaintiffs would construct single-family homes on them for sale to the public. Plaintiffs paid $500,000 as earnest money deposit, and agreed to pay 10% interest on the principal balance pursuant to a formula detailed in the contract. The contract further provided:

> "[I]n the event Seller is not able to convey title to any group of lots by the date upon which Seller is obligated to convey such lots fully improved [in accordance with the Palos West PUD Plan], because Seller has not completed the improvements relating to such group of lots in time, through no fault of the Purchaser, then, interest on the monies due from Purchasers for such group of lots shall not accrue from and after the agreed upon completion date of the improvements on such lots, up to and including their conveyance to Purchaser, fully improved as herein provided. If Seller fails to complete the improvements on such group of lots within sixty (60) days after the closing date with regard to such group of lots, then, all interest shall cease to accrue on the entire principal balance remaining due, until the improvements on such group of lots are completed ***."

The first group of lots, consisting of 113 parcels, was conveyed on December 24, 1986. The stage 2 and stage 3 lots were conveyed in Octo-

ber 1987 and April 1989, respectively. Plaintiffs' complaint related to a disagreement which arose prior to the conveyance of all of the stage 4 lots.

Plaintiffs alleged that under the original PUD plan, Palos West was to be a single unified community connected by a subdivision street system and containing numerous lake lots adjacent to a water detention area on the property. The complaint stated that on December 4, 1989, defendants, for the first time, furnished plaintiffs with a "Proposed Palos West Plan," dated June 14, 1989, and informed plaintiffs that the proposed plan had already been approved by the Cook County Zoning Board of Appeals. Plaintiffs alleged that defendants' failure to consult with plaintiffs or seek plaintiffs' approval for the proposed plan violated the contract provision giving plaintiffs the right to approve the site plans for those portions of Palos West which had not yet been approved by Cook County. In a letter dated December 19, 1989, plaintiff Robert Gallagher notified defendant Michael Halikias that plaintiffs objected to the proposed plan because it: eliminated the lake frontage lots in the original PUD plan; eliminated a section of street which connected an otherwise isolated 10-acre tract of the development; created a traffic hazard by adding an intersection nearby two others; and decreased the average lot size by adding four lots to the isolated 10-acre tract. In a second letter, also dated December 19, 1989, Gallagher further advised Halikias that the contract obligated defendants to complete construction on "Phase VII" of Palos West and to convey the remaining, improved stage 4 lots by the scheduled closing date of December 24, 1989. Gallagher stated that if the property was not improved and conveyed in accordance with the original plan, interest on those lots would cease to accrue as of February 27, 1990, and that interest on all remaining lots would cease to accrue on March 24, 1990. Plaintiffs alleged, and defendants do not dispute, that defendants did not complete the improvements on 71 of the 240 stage 4 lots as provided in the original contract, and that no lots have been conveyed to plaintiffs since April 4, 1989.

Plaintiffs asserted that defendants' refusal to perform its obligations to improve the property in accordance with the original PUD plan constituted a breach of the real estate contract. Plaintiffs alleged that defendants' failure to subdivide and improve the property in accordance with the original plan would cause irreparable injuries to plaintiffs. Plaintiffs sought a permanent prohibitory injunction restricting defendants from proceeding with the subdivision and improvement of Palos West under the proposed plan, a mandatory injunction compelling defendants to subdivide Palos West in accordance with the original plan, and specific performance.

On March 29, 1990, defendants filed their answer denying the material allegations of plaintiffs' complaint. In early April 1990, plaintiffs tendered two checks to defendants as payment of interest owed on previously conveyed lots and a prorated portion of the interest for the quarter ending March 31, 1990. In a letter dated April 30, 1990, defendants asserted that the amount tendered by plaintiffs for the quarter ending March 1990 was insufficient. Defendants noted that the contract provided for the suspension of interest payments only if the failure to convey lots was "through no fault of the [plaintiffs]." Defendants maintained that plaintiffs were at least partially at fault for the delay at issue and, therefore, that interest continued to accrue and that plaintiffs' failure to pay it constituted a breach of the contract. In a letter dated May 8, 1990, plaintiffs denied that they were partially at fault and stated that, absent substantiation of that claim, interest payments would not be made until defendants improved and conveyed the lots in accordance with the contract.

On June 4, 1991, after additional correspondence between the parties, defendants declared a "formal notice of default" on the contract because of plaintiffs' failure to make quarterly interest payments after the quarter ending March 31, 1990. Defendants reiterated that plaintiffs were partially at fault for noncompletion of the improvements to the property; alleged that $125,000 was due and owing; and advised plaintiffs that if the default was not cured within 60 days, the contract would automatically be terminated and all earnest money and other deposits made by plaintiffs would be retained by defendants as partial liquidated damages.

On June 17, 1991, plaintiff filed a second amended complaint adding a sixth count which sought a declaratory judgment that plaintiffs were not at fault for the delay in completing the improvements of the lots in Palos West; that defendants were wholly at fault for the delay; that interest payments were not due under the contract until completion and conveyance of the improved lots; and that plaintiffs were not in default of the contract. Count VI, and a companion motion for a preliminary injunction, also sought to enjoin defendants from taking any action, pursuant to their formal declaration of default, to terminate any of plaintiffs' rights and interests under the contract.

Defendants filed an answer and affirmative defenses to count VI of plaintiffs' amended complaint, and a memo in opposition to the motion for a preliminary injunction. Defendants alleged that at the time the contract was executed, the parties were unaware or did not consider that 58 acres located in the area designated as phase VII of the Palos West PUD consisted of federally protected wetlands; that defendants

were prohibited from developing the property without first obtaining permit approval from the Army Corps of Engineers pursuant to the Clean Water Act; and that the Army Corps of Engineers would not issue permit approval for the development of the phase VII portion of Palos West as set out in the original plan. Defendants argued that, because of the superseding Federal law, defendants were unable to perform their obligations under the contract, and, therefore, that performance of the contract could not be accomplished by the declaratory judgment or mandatory injunction requested by plaintiffs. Defendants asserted that the aforementioned frustration of the contract entitled them to termination of it and retention by them of a *pro rata* portion of the earnest money.

In their reply, plaintiffs denied that defendants were unaware of the existence of the wetlands. Plaintiffs further asserted that defendants breached the contract by preparing and seeking governmental approval for the revised development plans without consulting plaintiffs or obtaining plaintiffs' approval as required by the terms of the contract.

On August 27, 1991, following a hearing, the trial court entered a preliminary injunction enjoining defendants "from forfeiting the rights of the plaintiffs under the real estate contract for the failure to pay interest until further order of court." The trial court also ordered plaintiffs to deposit $100,000 in an interest-bearing account to secure payment of the interest in the event that defendants prevailed on the merits of the case. This timely interlocutory appeal from the issuance of the preliminary injunction followed.

A preliminary injunction is a provisional remedy in that it resolves no rights. Rather, it is granted to preserve the status quo prior to a hearing on the merits. (*Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 516 N.E.2d 915.) The status quo is that status which is necessary to maintain in order to prevent dissipation or destruction of the property at issue, pending a final hearing upon the merits. *Gannett Outdoor v. Baise*, 163 Ill. App. 3d at 721; *Gold v. Ziff Communications Co.* (1989), 196 Ill. App. 3d 425, 553 N.E.2d 404; *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166; see *Forest Preserve District v. Mt. Greenwood Bank Land Trust 5—0899* (1991), 219 Ill. App. 3d 524, 579 N.E.2d 1066; *In re Marriage of Weber* (1989), 182 Ill. App. 3d 212, 537 N.E.2d 1024.

■ Before an injunction should issue, the party seeking it must show that (1) the requesting party possesses a clearly ascertainable right or interest in need of protection; (2) there is no adequate remedy at law to protect the right; (3) irreparable harm will result if the equitable relief is not granted; and (4) there is a reasonable likelihood of success on

the merits if the proof sustains the allegations. (*Gannett Outdoor v. Baise*, 163 Ill. App. 3d 717, 516 N.E.2d 915; *Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273.) In addition, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury which the opposing party may suffer as a result of the issuance of the injunction. The decision to grant or deny preliminary injunctive relief is within the sound discretion of the trial court. Because the findings of the court should not be disturbed absent an abuse of discretion, the role of a reviewing court is limited to determining whether the trial court's decision was contrary to the manifest weight of the evidence. *Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d at 891.

Defendants first contend that issuance of a preliminary injunction was improper because plaintiffs failed to demonstrate the absence of an adequate remedy at law, or that they would suffer irreparable harm if the injunction was not issued. Defendants make several interrelated arguments in support of their position.

■ Defendants assert that the dispute at issue concerns payment of a liquidated sum of money, which is not the proper subject of a motion for injunctive relief. They argue that plaintiffs have an adequate remedy at law if they prevail on the merits of the case, because the only harm they would have suffered by denial of the injunction would be the loss of money paid as interest, a sum capable of exact computation. Defendants maintain that there is ample security for the compensation of any damages sustained by plaintiffs because under the contract, plaintiffs are entitled to a deed to the remaining 135 lots at any time; the value of those lots has significantly increased since execution of the contract; and the amount of interest could simply be deducted from the approximate $3 million balance due to defendants for those lots. Defendants also argue that plaintiffs did not claim irreparable harm due to any financial inability to pay the interest and, indeed, were able to deposit $100,000 as security for its payment in the event the court ruled against them on the merits of the suit.

Plaintiffs respond that defendants ignore key facts and raise matters not relevant to the issue on appeal. We agree.

Defendants' arguments focus almost exclusively on the nonpayment of the quarterly interest payments as the basis of the dispute between the parties. Defendants urge that the issue for judicial resolution is whether, by granting the injunction, the trial court improperly allowed plaintiffs to continue withholding those payments until a final determination on the merits of the case. That is not the issue before us.

The dispute giving rise to the underlying breach of contract action by plaintiffs was defendants' failure to improve and convey the phase VII lots in accordance with the terms of the contract. Whether plaintiffs were partially at fault for the noncompletion of the lots and, thus, whether or not they were entitled to withhold interest payments, were among the questions which would be determined following a hearing on the merits of plaintiffs' action. Prior to any such hearing, however, defendants sent plaintiffs a formal declaration of default on the contract, asserting a breach of the contract by plaintiffs in failing to make quarterly interest payments. The declaration contained notice that if the default were not cured within 60 days, the contract would automatically terminate.

The contract was the source of plaintiffs' rights in the property and the basis and subject matter of plaintiffs' action. The right plaintiffs sought to protect in their motion for a preliminary injunction was not the right to withhold quarterly interest payments; nor is that what the injunction ordered. Rather, plaintiffs sought injunctive relief to protect their contractual ownership interest in the remaining lots of the Palos West development project pending a final determination of the case. They sought to prevent defendants from divesting plaintiffs of their interest in the property by terminating the contract, and further sought to preclude defendants from disposing of the property at issue. An ownership interest in property is a right for which injunctive protection may be granted. See *Forest Preserve District v. Mt. Greenwood Bank Land Trust 5—0899* (1991), 219 Ill. App. 3d 524; *In re Marriage of Weber* (1989), 182 Ill. App. 3d 212.

■ Defendants argue that the injunction, which simply enjoins them from declaring a forfeiture of plaintiffs' rights under the contract, should have been denied because the only harm plaintiffs would suffer would be monetary damages, compensable at closing from the sale proceeds. We reject this argument. Without the injunction, defendants could have proceeded to terminate the contract from which plaintiffs' rights derived. Without contractual rights, plaintiffs could not demand conveyance of the property, and no other legal remedy would be adequate. Where land is the subject matter of the agreement, the inadequacy of the legal remedy is well settled. *Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971.

Defendants cite *Schodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 515 N.E.2d 1339, as supportive of their position. In *Schodeen*, the trial court issued a mandatory injunction ordering the defendant to convey 26 real estate lots to the plaintiff, a real estate developer, pursuant to an installment contract similar to the one in the

case before us. The appellate court held that the injunction should not have been granted because the evidence, including the plaintiff's own testimony, established that any losses he might sustain by the delay or failure of the defendant to convey the lots were compensable in money damages capable of exact computation. The court also held that the injunction was improper because it upset the status quo, which was the defendant's ownership of the property. The appellate court stated that rather than entering a mandatory injunction, "the trial court could have entered a preliminary injunction *** enjoining [the defendant] from conveying the lots to third parties until the case was decided on its merits. A traditional order of that type would have preserved the plaintiff's claim to the property and *** would have also preserved [the defendant's] right to a full hearing on the merits ***. In our opinion, the trial court's summary divestiture of [defendant] of the 26 lots denied [it] the opportunity to litigate the matter and, in effect, afforded the plaintiff a grant of specific performance." 162 Ill. App. 3d at 675.

Rather than supporting defendants' position, *Schodeen* actually counters it. The injunction in the case *sub judice* was prohibitory rather than mandatory. It prohibited a disruption of the status quo, which in the case at bar is the continuation of the real estate contract between the parties. The injunction preserved plaintiffs' ownership interests in the Palos West property by enjoining defendants from acting on their declaration of default and notice of contract termination. It was the type of injunction which the court in *Schodeen* stated could have been entered in that case.

■ Defendants now claim that they did not seek to work a forfeiture of plaintiffs' contract rights, but simply to obtain the interest monies. The language of the notice of default, however, clearly and definitely states otherwise. A previous, albeit legally defective, notice in the record also unequivocally stated that by reason of plaintiffs' defaults, the contract was terminated. We also note that in their answer to plaintiffs' second amended complaint, defendants presented the affirmative defense that the contract was incapable of performance and requested a judgment declaring it to be terminated. Plaintiffs were justified in giving credence to defendants' pronouncements.

■ Defendants contend that issuance of the injunction was an abuse of discretion for two additional reasons. First, defendants assert that the injunction did not serve the intended function of preserving the status quo. It is defendants' position that the last, peaceable, noncontested status between the parties was plaintiffs' payment of interest which had accrued up to March 30, 1990, and that it is that status which should have been maintained. We disagree. As defendants point out, the

underlying litigation was already underway at the time plaintiffs made their interest payment. Both the complaint and defendants' answer had been filed. The amounts paid by plaintiffs were for interest on previously conveyed lots and for the portion of the first quarter interest of 1990 prior to the February and March suspension dates. As stated above, the status quo to be maintained in this case was the continued validity of the real estate contract which defendants threatened to terminate.

■ Defendants also argue that the trial court improperly failed to balance the injunction's burden on defendants against its benefits to plaintiffs. Defendants maintain that plaintiffs did not claim that payment of the disputed interest would be burdensome, whereas the court acknowledged that defendants would suffer a hardship if deprived of that interest. This argument distorts the issue.

Defendants' notice of termination of the contract triggered the necessity for the injunction. The sole purpose of the injunction was to prohibit defendants from acting upon their declaration pending a hearing on the controverted facts. In the event plaintiffs do not prevail on the merits of their case, they will be liable to defendants for the interest payments they withheld. The amount of any money owed defendants is subject to exact computation. Issuance of the injunction does not deprive defendants of an adequate remedy at law if it is determined that plaintiffs wrongfully withheld those payments. In contrast, denial of the motion could have resulted in the divestiture of plaintiffs' interest in the property and made it impossible for the trial court to grant the relief sought by plaintiffs in the event of a final determination in their favor on the merits of their complaint. The trial court properly balanced the equities in determining that issuance of the preliminary injunction was necessary to protect plaintiffs' ownership rights in the property pending a hearing on the underlying case. We find no abuse of discretion in the issuance of a preliminary injunction in this case.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.