JANE B. GRABER, Plaintiff-Appellant, v. JANE E. BADEGIAN, Defendant-Appellee.

First District (5th Division)   No. 1—92—1735

Opinion filed March 5, 1993.—Rehearing denied April 16, 1993.

Rieck & Crotty, P.C., of Chicago (Richard J. Sorman, of counsel), for appellant.

Bollinger, Ruberry & Garvey, of Chicago (Kenneth E. North and Thomas More Ryan, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff appeals from an interlocutory order of the circuit court denying her petition for a preliminary injunction to enforce a restrictive covenant. Plaintiff, a dentist, sought to enjoin the defendant, her former associate, from practicing dentistry within a four-mile radius of plaintiff's office. The trial court denied injunctive relief for the following reasons: (1) the hardship to the defendant which would result

if the preliminary injunction was granted outweighed any injury to the plaintiff which would occur if the preliminary injunction was denied; (2) it was unclear whether defendant's conduct fell within the scope of the covenant because the language of the covenant was ambiguous; and (3) an adequate legal remedy was available—the liquidated damages set forth in the parties' contract.

We affirm.

BACKGROUND

The plaintiff, Jane B. Graber, is a dentist licensed to practice in the State of Illinois. Graber has been practicing dentistry for approximately 13 years and has maintained a practice at 1240 Meadow, Northbrook, Illinois, for approximately eight years. During this time, Graber developed a substantial client patient base.

On January 1, 1988, Graber entered into an agreement with the defendant, Jane E. Badegian, who is also a licensed dentist. Pursuant to the agreement, Badegian was to provide dental services, as an independent contractor, for Graber's practice. At the time of the agreement, Badegian was recently licensed and had no patients of her own.

The agreement provided in pertinent part:

"1. *Association*. JANE BADEGIAN will be associated as an independent contractor with the dental practice of JANE B. GRABER as a general dentist in a part-time basis commencing January 1, 1988. The term of association shall be for twelve months and can be renewed from year to year or terminated as provided herein.

\* \* \*

4. *Expenses*.

\* \* \*

(f) In the event of the termination of the association described herein, a letter endorsing the Practice, in substantially the form of Exhibit C attached hereto and made a part hereof, shall be sent, within thirty days of the termination, to all patients of the Practice who have been treated by BADEGIAN, and the costs of printing and mailing shall be borne by BADEGIAN.

\* \* \*

8. *Restrictive Covenants*.

A. BADEGIAN agrees that for a period of five years following the termination of her association with the Practice, BADEGIAN shall not telephone, mail announcements to, or in any way approach or attempt to solicit or cause any other per-

son, firm or corporation to solicit any patient of the Practice or any person whose name appears on patient lists assembled by the Practice or patient lists in possession of the Practice for purpose of providing dental services of any kind.

* * *

C. BADEGIAN agrees that if her association is terminated for any reason by either BADEGIAN or the Practice, she will not be associated in any capacity with any dental office within a four mile radius of the practice for a period of two years. In the event of breach of this sub-paragraph c of Paragraph 8, BADEGIAN agrees that she will pay liquidated damages of thirty-thousand ($30,000) dollars to the Practice.

D. In the event that BADEGIAN violates any of the provisions of this Paragraph 8, the parties acknowledge that the remedy at law for any breach will be inadequate. The Practice shall be entitled, in addition to the liquidated damages specified, (1) to obtain specific performance and injunctive relief to prohibit BADEGIAN from such practices and (2) to obtain money damages for any injury to the Practice resulting from such violations and the Practice shall be relieved of the necessity of proving actual damages or the inadequacy of the legal remedy."

On August 30, 1990, Graber and Badegian amended the agreement. The amendment reworded the letter referenced in paragraph 4(f), but left the other essential provisions intact.

At some time between April 15 and April 18, 1991, the parties terminated their agreement. On or about April 18, 1991, Badegian advised Graber that she intended to relocate her dentistry practice to 4115 Dundee Road (Sanders Court), Northbrook, Illinois. According to the plaintiff, Badegian represented to Graber that the Dundee office was more than four miles from Graber's Meadow office. In contrast, Badegian maintains that she told Graber that the distance was no more that 3.9 miles away from Graber's office. The actual distance was 2.85 miles.

On approximately April 19, 1991, both parties signed the following letter which was presented to Graber by Badegian:

"This is to confirm our conversation and agreement of Thursday, April 18, 1991, regarding the termination of our association and contract dated 1990. Subsequent to our agreement, you will display a notice in the reception area, stating my final date of professional services at your office will be May 16, 1991. Furthermore, this notice per our agreement identifies my

new location as 4115 Dundee Road (Sanders Court), North-brook, Illinois."

On June 20, 1991, Graber filed her verified complaint and petition against Badegian seeking a temporary restraining order and preliminary injunction to prohibit Badegian's violation of the agreement. The court, Hon. Sophia Hall, presiding, denied the injunctive relief sought by Graber on June 26, 1991, and again on July 15, 1991, when Graber renewed the petition.

Subsequently, Badegian decided to relocate her dental practice. She retained the services of Jackie Elliott, a real estate agent, who suggested the location commonly known as 1304 Waukegan Road, Glenview, Illinois. Elliott measured the distance from the new location to Graber's office and concluded that the offices were over four miles apart. Prior to executing a lease at the Glenview office, defendant also sought the advice of village planners.

On or about November 8, 1991, Badegian advised Graber that she was considering leasing office space for a dental practice at 1304 Waukegan Road in Glenview. Graber responded that she would seek strict enforcement of the restrictive covenant. Subsequently, on December 20, 1991, Badegian executed a five-year lease for the Glenview office.

On April 1, 1992, plaintiff commissioned a licensed land surveyor to determine the distance between the plaintiff's Meadow office and 1304 Waukegan Road. The surveyor reported that the distance between the buildings was 3.8657 miles, 709.1 feet short of four miles.

On April 9, 1992, Graber, filed an amended verified complaint for a temporary restraining order and preliminary injunction. On April 27, 1992, the court, Hon. Everette Braden, presiding, denied the plaintiff's petition for the following reasons:

> "[T]he Court feels that by granting the injunction, it would cause an extreme harsh result to the defendant, and the Court in that regard was particularly mindful of the case of *Boot* [*sic*] where in that case there was an injunction before the court, and the Court agrees with the ruling in *Boot* [*sic*] that it requires the court to consider a balancing of the injury of the parties in considering whether an injunction should be granted.
>
> * * *
>
> *** [T]his Court considers this case to be an antithesis of *Boot* [*sic*]. In that case, the granting of the injunction, the court felt that it would cause an extreme injury to the plaintiff if the injunction was not granted. In this case, the Court considers that just the opposite. If the injunction is granted, the Court

feels that it would be an extreme hardship to the defendant. Also, the court feels that the injury here could be compensated by adequate remedy at law as far as damages are set forth in the agreement itself.

* * *

*** [With respect to] the language of the agreement itself the Court certainly feels that there is some question as to whether that restriction in the agreement as far as association is concerned, whether the defendant's conduct of engaging in practice as a sole practitioner would fall within the scope and ambit of that language.

So for that reason, the Court is denying the relieve [*sic*] requested by the plaintiff in asking that the conduct of the defendant be enjoined."

On April 30, 1992, Graber filed her notice of interlocutory appeal, pursuant to Illinois Supreme Court Rule 307 (134 Ill. 2d R. 307).

OPINION

▮ The trial court is vested with a large measure of discretion in the grant or refusal to grant a preliminary injunction, and its determination will not be overturned on review absent a showing of the abuse of that discretion. (*Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1144-45, 441 N.E.2d 927; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 502, 392 N.E.2d 1148.) In determining whether the circuit court abused its discretion, this court should not decide whether it agrees with the circuit court's decision, but rather, should determine whether the circuit court acted arbitrarily, or in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law. *Zurich Insurance Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 572 N.E.2d 1119.

A preliminary injunction is an extraordinary remedy and should be granted with the utmost care. (*Hayden's Sport Center*, 109 Ill. App. 3d at 1145; *Shorr Paper Products*, 74 Ill. App. 3d at 505.) The party seeking a preliminary injunction must carry the burden of persuasion on four issues: (1) there is no adequate remedy at law and there will be irreparable injury if the injunction is not granted; (2) the threatened injury to him will be immediate, certain, and great if the injunction is denied while the loss or inconvenience to the defendant is comparatively small and insignificant if granted; (3) there is a reasonable likelihood of prevailing on the merits of the case; and (4) there would be no injurious effect upon the general public. *McCor-*

*mick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 417, 364 N.E.2d 420.

In this case, plaintiff Graber sought to enjoin her former associate, Badegian, from practicing dentistry within a four-mile radius of Graber's office. The circuit court denied the plaintiff's petition for a preliminary injunction primarily because it found that the second prerequisite for the issuance of a preliminary injunction was not met. The circuit court found that the hardship to the defendant which would result if a preliminary injunction was granted outweighed any injury to the plaintiff which would occur if the preliminary injunction was denied. We agree.

The contract entered into by the parties contained a restrictive covenant which provided that Badegian would not be associated with any dental office within a four-mile radius of Graber's office for a period of two years. The licensed land surveyor which the plaintiff commissioned to determine the distance between plaintiff's office at 1240 Meadow, Northbrook, Illinois, and the defendant's office at 1304 Waukegan Road, Glenview, Illinois, reported that the distance between the buildings was 3.8657 miles, 709.1 feet short of four miles. We note that the difference between 3.8657 and 4 miles is equivalent to a deviation of 3.3%.

Graber did not demonstrate that she was injured as a result of the defendant's 3.3% deviation from the terms of the agreement. Instead, she urges this court to presume injury. Graber insists that she has a protectable interest in her patients. She argues that once a protectable interest is demonstrated, "injury to plaintiff will presumably follow if that interest is not protected." See *Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 380, 422 N.E.2d 1034.

■ The trial court made no findings with respect to the question of whether Graber possessed a protectable interest in her patients. Assuming, *arguendo*, that Graber does have a protectable interest in her patients, the trial court must still balance the hardships which might result to the parties from the grant or denial of an injunction. (See *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) In balancing the hardships, the trial court must conclude that the granting of temporary relief outweighs any possible injury which the defendant might suffer by its issuance. *Booth*, 48 Ill. App. 3d at 217; *Professional Business Management, Inc. v. Clark* (1967), 83 Ill. App. 2d 236, 241, 227 N.E.2d 371.

The record contains no evidence of substantial injury to Graber. In light of modern methods of transportation, the difference between 4 miles and 3.8657 miles is minuscule.

In contrast, the record indicates that if the preliminary injunction is granted, the injury to the defendant would be great. Badegian produced evidence which indicates that if she is forced to move from the Glenview office, she will lose her entire investment in that office, and in all likelihood, enter bankruptcy. In addition to statements prepared by her accountant which attest to her financial condition, Badegian provided evidence of a five-year lease commitment as well as other obligations resulting from her investment in the Glenview office. Furthermore, she demonstrated her good-faith belief that her new office was in fact four miles from the plaintiff's office by providing affidavits from her real estate agent and the village planner.

In light of all the evidence presented, we cannot say that the trial court abused its discretion in concluding that the hardship to the defendant which would result if the preliminary injunction was granted outweighed any injury to the plaintiff which would result if the preliminary injunction was denied. Therefore, we hold that the preliminary injunction was properly denied.

The circuit court relied upon two additional grounds to support its decision to deny the petition for a preliminary injunction. Although the validity of these additional grounds does not affect our holding, these issues may resurface in the subsequent proceedings below. Therefore, we briefly address the alternate grounds for the trial court's holding.

The circuit court expressed doubt that plaintiff would succeed on the merits. The court was not convinced that the restrictive covenant actually prohibited the behavior plaintiff sought to enjoin. The relevant portion of the parties' agreement provides: "BADEGIAN agrees that if her association is terminated for any reason by either BADEGIAN or the Practice, she *will not be associated in any capacity with any dental office within a four-mile radius of the practice for a period of two years.*" (Emphasis added.)

Badegian insists that this language indicates that the parties only wished to prohibit Badegian from associating with *another* dental office (*i.e.,* a competitor), and did not prohibit her from setting up a solo practice within the four-mile radius. On the other hand, Graber maintains that the parties intended to prohibit defendant from *practicing* dentistry in any capacity within a four-mile radius.

Defendant argues that because the language is ambiguous, it must be construed against the drafter, Graber, in this case. (See *City of Chicago v. Carpenter* (1968), 95 Ill. App. 2d 81, 283 N.E.2d 70.) The trial court apparently believed that there was some ambiguity surrounding the meaning of the word "association."

We find no ambiguity in this language. The restrictive covenant plainly prohibits Badegian from associating with any dental office, within a four-mile radius, *in any capacity*. The language is broad enough to encompass solo practice as well as any form of association.

Finally, the trial court denied injunctive relief on the ground that an adequate legal remedy was available to the plaintiff—the liquidated damages provided for in the agreement. While we hold that the preliminary injunction was properly denied, we consider it premature to determine the adequacy of a legal remedy at this time. The denial of the preliminary injunction does not preclude the trial court from subsequently issuing a permanent injunction. The determination of the appropriate remedy in this case cannot be made without additional factual findings.

For the foregoing reasons, we hold that the circuit court did not abuse its discretion in refusing to enter a preliminary injunction against the defendant.

Affirmed.

GORDON, P.J., and MURRAY, J., concur.