DEBRA GERBER et al., Plaintiffs-Appellants, v. MARK HAMILTON et al., Defendants-Appellees.

Fifth District     No. 5—94—0759

Opinion filed December 27, 1995.

RARICK, J., dissenting.

David W. Dugan, of Wood River, for appellants.

Bob L. Perica, of Hoefert & Perica, P.C., of Alton, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs brought an action in the circuit court of Madison County seeking to enjoin the defendants from continuing the operation of a beauty salon in their home. Plaintiffs, neighbors of the defendants, allege that defendants' operation of a beauty salon violates the restrictive covenants incorporated into the deed of the lots within their subdivision, Whispering Oaks. The circuit court held that the defendants' operation of a beauty salon did not violate the restrictive covenants. We reverse and remand with directions.

The deed to the lots in the Whispering Oaks subdivision contains numerous covenants and restrictions. One provided:

"1. Said restricted lots shall be used for residential purposes only for the construction thereon of not more than one single-family dwelling house not exceeding two (2) stories in height and private garage, if any, must be attached to the house."

Another restriction provided:

"6. No person shall use or occupy any lot in such a manner as to create a nuisance to the other lot owners or in a manner which would tend to make the neighborhood undesirable for residential purposes. *** No advertising signs shall be displayed on the premises except for sale or rent of the property, or for advertising display homes. *No business, trade or other commercial enterprise shall be set up on any lot.* Nothing herein shall prevent any owner from doing professional work in his own home provided that there are no signs to that effect placed upon the premises or other advertising to that effect." (Emphasis added.)

On April 23, 1994, defendants moved into their home in Whispering Oaks subdivision. The house is located on a cul-du-sac with six other homes, all of similar size and value, and is worth approximately $180,000. Defendant Lana Hamilton testified that she owns and oper-

ates "Lana's Place," a beauty salon business, out of her residence. Lana's Place is open 3½ days a week and averages between 10 and 15 customers a day, and approximately 35 to 40 cars driven by customers arrive at the house each week. Plaintiff Debra Gerber testified that once the Hamiltons moved into the subdivision, she began hearing the constant sound of car doors opening and closing, the sound of hair dryers blowing, and the sound of people talking loudly to be heard above the noise of the hair dryers, and she began noticing an increase in traffic in the neighborhood. Plaintiff Alberta Gallay, who lives directly next door to defendants, testified as to the same disturbances testified to by Debra Gerber but further added that on a few occasions people have mistaken her house for that of the defendants. Harold Blasters, the developer of the subdivision, who had the covenants and restrictions drafted, testified that he did not want the subdivision to turn into a commercial venture but that he also knew people were doing various things in their homes. He never directly affirmed or denied the proposition that defendants' operation of a beauty salon is prohibited by the restrictive covenants he drafted.

On October 6, 1994, a bench trial was held regarding the creation of a permanent injunction to enjoin the defendants' operation of a beauty salon. The court found that at the current level of activity there was no nuisance, that defendants' business is a professional business, that the primary use of the home was residential, and that the current use of the premises is consistent with the restrictions in the covenants.

On appeal, plaintiffs argue that the circuit court's finding is against the manifest weight of the evidence. For the following reasons, we agree with plaintiffs and reverse the circuit court.

The decision on whether to grant injunctive relief is committed to the sound discretion of the trial court, and its decision will not be disturbed on review absent an abuse of that discretion. (*Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 566 N.E.2d 379.) The test for determining whether the trial court abused its discretion is whether the trial court's decision is contrary to the manifest weight of the evidence. (*Continental Cablevision of Cook County, Inc. v. Miller* (1992), 238 Ill. App. 3d 774, 606 N.E.2d 587.) A trial court's judgment is against the manifest weight of the evidence if the opposite result is clearly evident. *In re J.P.* (1994), 261 Ill. App. 3d 165, 633 N.E.2d 27.

■ When interpreting a covenant, a court should strictly construe its language and all doubts and ambiguities are to be resolved in favor of natural rights and against restrictions on the use of property. (*Wier v. Isenberg* (1981), 95 Ill. App. 3d 839, 420 N.E.2d 790.)

However, this rule will not be applied to ignore or override the specific language or obvious purpose of a restriction. *Wier*, 95 Ill. App. 3d at 843, 420 N.E.2d at 793.

■ The specific language of a restrictive covenant in the deed for the Whispering Oaks subdivision prohibits the setting up of a business, trade, or commercial enterprise. "No business, trade or other commercial enterprise shall be set up on any lot." There is no dispute that "Lana's Place" is a business. During the testimony of defendant Lana Hamilton, she referred to her beauty salon as a "business" more than a half a dozen times. This establishment of a business is in direct violation of the specific language of this restrictive covenant.

Defendants argue that their beauty salon falls under a professional work exception in a covenant which states, "Nothing herein shall prevent any owner from doing professional work in his own home provided that there are no signs to that effect placed upon the premises or other advertising to that effect." We disagree. When viewing the specific language of this deed and the circumstances surrounding its execution, there is a distinction between allowing an individual to engage in professional work at home and allowing an individual to establish and operate a business at home. The former is allowed, the latter is prohibited. Defendants have gone beyond the mere engaging in professional work at home and have set up a business. Clients come to defendants' home, all business phone calls are received at the defendants' home, noises related to the business can be heard coming from the defendants' home, and all the work relating to Lana's beauty salon business is performed at defendants' home. This violates the intent of the restrictive covenant in the deed.

In other Illinois cases which have addressed this issue, courts have focused on the purpose of such restriction and whether the use in question defeated that purpose. In *Wier v. Isenberg* (1981), 95 Ill. App. 3d 839, 420 N.E.2d 790, a covenant provided that no lot was to be used except for single residential purposes. Defendants were practicing psychotherapy and social work from their home. In appealing the trial court's granting of an injunction, the defendants argued, *inter alia*, that social work services were not incompatible with residential use. The court rejected this argument, holding that because the occupation in which the defendants were engaged necessitated patients and clients coming to their home on a regular basis, the use could not reasonably be considered limited to a residential purpose. *Wier*, 95 Ill. App. 3d at 845, 420 N.E.2d at 794.

In reaching this conclusion, the court relied on *N.H. Engle & Sons, Inc. v. Laurich* (1968), 98 Ill. App. 2d 18, 240 N.E.2d 9. In *Lau-*

*rich,* the court held that property restricted to "residential purposes only" precluded a doctor from conducting his practice in his home. In reaching this conclusion, the court reasoned:

> "When a professional man pursues an occupation in his home in which it is necessary that patients, clients or patrons call at his home for the purpose of obtaining treatment, or similar activity, it then becomes a nonresidential use, and is contrary to a restrictive covenant of the type which was contained in the deed in the instant case. The purpose of the covenant was to eliminate traffic, noise and confusion in the neighborhood so it remains a residential neighborhood. The use by a doctor of his home for such purposes is clearly one type of use which was designed to be prohibited by the clause. It is understandable, that not all uses of a home for nonresidential purposes would be violative of the covenant referred to. An illustration of a use which apparently would not be a violation of the covenant, would be the use by an author of a portion of his home for the business of the author in the process of writing, etc. It is when the business or profession requires marked changes or activity outside of the residence itself in the form of noise, or displays, or patients entering and leaving in substantial numbers, that the use becomes a violation of the covenant." (*Laurich,* 98 Ill. App. 2d at 26-27, 240 N.E.2d at 13.)

While the restrictions in *Wier* and *Laurich* made no explicit provision allowing for nonresidential use, the court found that some nonresidential uses nevertheless are not violative of such a general restriction. However, in the present case, the covenants, while limiting use for residential purposes only, also specifically prohibit the setting up of a business or a commercial enterprise. Although there is a "professional work" exception, we do not believe that this contemplated the establishment of an enterprise such as defendants', whereby patrons and customers frequently visit the residence. When viewing the restrictions, we believe that the prohibitions allow one to bring work home or allow one to perform certain at-home professions, but not to set up a business. The intent of the covenants is to preserve the residential nature of the subdivision and not to allow businesses which have the effect of increasing noise and traffic. Evidence shows that defendants' business had that effect; therefore, defendants' business violates the restrictive covenants.

Defendants contend that Blasters testified that he told defendants that as long as no signs were put up and there was no advertising, it was permissible according to the restrictive covenants to do professional work in the home, and that a cosmetologist, licensed by the State of Illinois, was the type of profession he contemplated when drafting the covenants and restrictions for Whispering Oaks subdivi-

sion. We disagree with defendants' reading of the record. The following is the testimony of Harold Blasters, which defendants cite as the basis for their conclusion:

"Q. Do you think conducting a cosmetology business is a business within the term as used in your covenant? Is that a business?

A. It is a business that's covered by a professional license. I mean—

Q. Is it a commercial activity?

A. A home service activity that is a professional business.

Q. Is that a commercial activity?

A. I don't know how to explain that.

Q. How do you define professional?

A. Well, professional business has to be licensed by—I mean, it can be different things. We have a number of attorneys. I would consider your occupation a profession, and you're regulated by the state.

\* \* \*

Q. Is that the only criterion that is? Licensure? So if they are licensed, therefore, they are professional in your mind? We are only looking for in your mind.

A. Probably. That's true, yeah."

In another part of Blasters' testimony, where he was asked specifically whether the restrictive covenants permit defendants' operation of a beauty salon, his response was, "I said that it is the restrictions imply that, you know, there is nothing against professional use." Harold Blasters also testified that the purpose in developing the subdivision was to create a nice residential area and not turn the subdivision into a commercial venture. He agreed that one of the things he envisioned was a lawyer or judge occasionally bringing home work, but not having the home as a main office. On re-cross-examination, Blasters was asked: "What if I set up business, didn't hang out a sign, but that was my main office. That's where I did all my work. That's not what you envisioned by these restrictions, is it?" Blasters responded, "No, it's not what I envisioned by these."

Nowhere in the testimony did Blasters clearly affirm or deny that defendants' beauty salon complies or does not comply with the restrictions. Therefore, we cannot accept defendants' argument that Blasters acknowledged that defendants' beauty salon complies with the restrictive covenants.

Based on the specific language of the deed and the general purpose of the deed, to restrict lots to residential use, we find that defendants' beauty salon is prohibited by the restrictive covenants, and hence the circuit court's decision is contrary to the manifest

weight of the evidence and its decision is an abuse of discretion. Given this conclusion, we need not address plaintiffs' contention that cosmetology is not a profession.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and this cause is remanded with directions to enter an injunction prohibiting defendants from conducting their cosmetology business out of their home.

Reversed and remanded with directions.

CHAPMAN, J., concurs.

JUSTICE RARICK, dissenting:

I respectfully dissent.

The majority concludes that the trial court's decision to deny injunctive relief was an abuse of discretion. The majority bases this conclusion upon its finding that the circuit court's finding that defendants' use of their property was consistent with the restrictive covenants was contrary to the manifest weight of the evidence.

Initially, I note that many of the cases which discuss the standard of review when dealing with injunctive relief are imprecise in the application of the abuse of discretion and manifest weight of the evidence standards. *Millard*, cited by the majority, holds that the trial court is vested with discretion to grant or deny injunctive relief, that the role of the reviewing court is to determine whether the trial court's findings are contrary to the manifest weight of the evidence, and that those findings should be set aside only upon a showing of an abuse of discretion. *Continental Cablevision*, also cited by the majority, holds that the test of whether the trial court abused its discretion is whether its decision is contrary to the manifest weight of the evidence. In *Heritage Standard Bank & Trust Co. v. Steel City National Bank* (1992), 234 Ill. App. 3d 48, 599 N.E.2d 1283, the court held that because the trial court's decision on whether to grant injunctive relief should not be disturbed absent an abuse of discretion, the reviewing court's role was limited to determining whether the trial court's decision was contrary to the manifest weight of the evidence. Other cases use similar language when setting forth the standard of review. (See *Lyle R. Jager Agency, Inc. v. Steward* (1993), 253 Ill. App. 3d 631, 625 N.E.2d 397; *In re Marriage of Joerger* (1991), 221 Ill. App. 3d 400, 581 N.E.2d 1219; *Bryant v. Village of Sherman* (1990), 204 Ill. App. 3d 583, 561 N.E.2d 1320; *Jones v. Board of Fire & Police Commissioners* (1984), 127 Ill. App. 3d 793, 469 N.E.2d 393.) The two standards are not the same, however, and the particular standard to be applied depends upon the procedural posture of the case.

Under the abuse of discretion standard the question is whether the lower court acted arbitrarily or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law. (*Graber v. Badegian* (1993), 242 Ill. App. 3d 1049, 611 N.E.2d 1291.) The manifest weight of the evidence standard requires the reviewing court to review all the evidence in a light most favorable to the prevailing party and will reverse the lower court only if the opposite conclusion is clearly apparent or the fact finder's finding is palpably erroneous and wholly unwarranted. (*Tedrowe v. Burlington Northern, Inc.* (1987), 158 Ill. App. 3d 438, 511 N.E.2d 798.) More deference is shown the lower court under the abuse of discretion standard than the manifest weight standard.

Whether the abuse of discretion standard or the manifest weight standard applies depends upon whether the issue of the injunction results in the determination of the merits of the case. The application of the abuse of discretion standard is predicated on the theory that a preliminary injunction is not a final adjudication on the merits. (*Witter v. Buchanan* (1985), 132 Ill. App. 3d 273, 476 N.E.2d 1123.) Where the issuance of a preliminary order effectively decides the merits of the case, however, a reviewing court should consider whether the trial court's findings are against the manifest weight of the evidence and whether the court erred legally. *Hess v. Clarcor, Inc.* (1992), 237 Ill. App. 3d 434, 603 N.E.2d 1262.

In the present case the parties agreed and stipulated to the court's consideration of plaintiffs' request for both a preliminary injunction and a permanent injunction, and it was the permanent injunction the court denied. This was a final adjudication on the merits, and therefore the manifest weight of the evidence standard is applicable.

I do not agree with the majority's conclusion that the trial court's findings were against the manifest weight of the evidence. The restrictive covenants seek to preserve the residential character of the neighborhood but also permit residents to do professional work out of their home. Whether the work defendants are doing in their home results in such disruption as to destroy the residential nature of the neighborhood is a question of fact. Reviewing the evidence in a light most favorable to the defendants, the prevailing party, I do not believe that it can be said that a conclusion opposite to that drawn by the trial court is clearly apparent, and therefore the court's conclusion was not against the manifest weight of the evidence.