2021 IL App (2d) 200174-U
No. 2-20-0174
Order filed April 28, 2021

NOTICE: This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF WEST CHICAGO, a municipal corporation, | ) ) ) | Appeal from the Circuit Court of DuPage County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-ED-27 |
| VIRGINIA R. PIETROBON AS TRUSTEE OF JOHN F. PIETROBON FAMILY TRUST, DATED DECEMBER 19, 1990, AS TO AN UNDIVIDED 22.93 PERCENT INTEREST and VIRGINIA R. PIETROBON AS TRUSTEE OF THE JOHN F. PIETROBON MARITAL TRUST DATED DECEMBER 19, 1990, AS TO AN UNDIVIDED 77.07 PERCENT INTEREST, UNKNOWN OWNERS, and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Kenneth L. Popejoy, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Hutchinson and Brennan concurred in the judgment.

ORDER

¶ 1    *Held*: The trial court's finding that defendant-trustee successfully rebutted plaintiff's *prima facie* case that condemnation was authorized was not contrary to the manifest weight of the evidence.

¶ 2         I. INTRODUCTION

¶ 3 Plaintiff, the City of West Chicago, appeals an order of the circuit court of Du Page County granting the traverse and motion to dismiss of defendant Virginia R. Pietrobon (as Trustee of the John F. Pietrobon Family Trust, dated December 19, 1990, as to an undivided 22.93 percent interest, and as Trustee of the John F. Pietrobon Marital Trust dated December 19, 1990, as to an undivided 77.07 percent interest). For the reasons that follow, we affirm.

¶ 4         II. BACKGROUND

¶ 5 This case arises out of an attempt by plaintiff to condemn a strip of defendant's property to construct a city street. Previously, plaintiff entered into an annexation agreement with a landowner that neighbored defendant's property, A&A Conte Joint Venture Limited Partnership (A&A Conte). As part of the agreement, the neighboring landowner was to construct a street on the border between it and defendant's property. At the time this agreement was consummated, it was believed that the roadway upon which the street was to be constructed was public land. However, it was later learned that the land in question actually belonged to defendant, despite it being referred to on various documents as Reque Road. Plaintiff then sought to acquire a right of way, ultimately via its power of eminent domain.

¶ 6 This is the second time that this case has come before this court (the evidence presented during the proceedings below is discussed in detail in our earlier disposition and will not be repeated here (See *City of West Chicago v. Pietrobon*, 2019 IL App (2d) 180850-U, ¶¶ 3-34)). During the earlier appeal, we held that the trial court erred in determining that plaintiff had not set forth a *prima facie* case authorizing the proposed taking. *Id.* ¶ 42. We remanded the case so that the trial court could clarify its findings regarding whether defendant fulfilled its burden of rebutting plaintiff's *prima facie* case. *Id*. ¶ 46.

¶ 7     On remand, the trial court held that defendants "have met their high burden of showing that the City has abused its discretion in condemning [defendant's property known as] Reque Road." It explained its rationale via a letter opinion. The trial court noted that plaintiff had established that condemned property "would be converted to a public street, meaning it would be publicly owned and controlled." Thus, the issue became "whether the acquisition is necessary for a public purpose." The trial court acknowledged that a taking could be justified by the future needs of the condemnor. However, it also noted that the existence of detailed development plans was a factor that a court could consider in determining that the taking served a legitimate public purpose and that such plans were absent here. Moreover, it noted that an annexation agreement between plaintiff and adjoining landowner A&A Conte required A&A Conte to construct a road on the land plaintiff was seeking to condemn. Given the absence of any concrete development plans and the existence of plaintiff's contractual obligation to A&A Conte, the trial court found that there was no public purpose underlying the proposed condemnation and that the road plaintiff intended to build would serve only a single private party. The trial court therefore granted defendant's traverse and motion to dismiss. This appeal followed.

¶ 8                                    III. ANALYSIS

¶ 9     The central question presented in this appeal is whether the trial court properly determined that defendant met her burden of showing that the taking at issue in this case was not legally justified. As we determined in the previous appeal in this case, plaintiff established a *prima facie* case authorizing the taking of the subject property. See *City of Chicago v. Midland Smelting Co.*, 385 Ill. App. 3d 945, 965 (2008). By introducing the ordinance authorizing the taking, plaintiff raised a presumption that the taking was valid. See *Enbridge Pipeline (Illinois) v. Murfin*, 2020 IL App (5th) 160007, ¶ 84. Therefore, the burden shifted to defendant to establish that the

condemnor abused its discretion in determining that the taking was necessary to serve a public purpose. *Enbridge Energy (Illinois) v. Kuerth*, 2016 IL App (1st) 150519, ¶ 145. A defendant must carry this burden by clear and convincing evidence. *Village of Wheeling v. Exchange National Bank of Chicago*, 213 Ill. App. 3d 325, 335 (1991). If defendant produces sufficient evidence to rebut the presumption, the presumption vanishes and the trial court "considers evidence submitted by both parties during the evidentiary phase as if the presumption of necessity never existed." *Murfin*, 2020 IL App (5th) 160007, ¶ 84.

¶ 10    We review this issue employing the manifest-weight standard. *Trotter v. Spezio*, 349 Ill. App. 3d 959, 963 (2004). Therefore, we will reverse only if an opposite conclusion is clearly apparent. *Gerber v. Hamilton*, 276 Ill. App. 3d 1091, 1093 (1995). That is, we will reverse here only if it is clearly apparent that defendant failed to carry its burden of showing that plaintiff abused its discretion in determining that the ordinance was necessary to serve a public purpose. Moreover, "[d]uring the hearing on a traverse and a motion to dismiss, the credibility of the witnesses and the weight to be given to their testimony are to be determined by the trial court." *City of Naperville v. Old Second National Bank of Aurora*, 327 Ill. App. 3d 734, 739 (2002).

¶ 11    As noted, the trial court here determined that defendant successfully rebutted plaintiff's *prima facie* case and demonstrated that plaintiff abused its discretion in enacting the condemnation ordinance. Both parties can muster evidence in support of their respective positions. For example, plaintiff can point to the testimony of Arturo Conte (an owner of A&A Conte) stating that he intended to "develop the property as light industry" and that grading plans existed. In fact, some grading and construction of a detention basin had already commenced. It is undisputed that Reque Road will be constructed to standards set by plaintiff and title will remain with plaintiff. Michael Guttman (the City Administrator of West Chicago) described how the property would be

developed and testified that development in West Chicago had "picked up tremendously in the last year and a half." Moreover, the A&A Conte property is zoned for manufacturing. Plaintiff points to the fact that Reque Road had been identified as a public road on various plats in support of its position; however, we also note that Guttman acknowledged that it had usually been gated, so it was not, in fact, used by the public, making any reliance on its historical status questionable.

¶ 12     Gutmann testified that they "hoped for there to be a nice business park at some point in time." The trial court discounted Guttman's testimony, noting that he had no "knowledge of any specific concrete plans for any of these [development] projects." Moreover, as the trial court observed, "Guttman admitted that 'no end users have been identified.' " We also note that A&A Conte has submitted nothing beyond grading plans regarding the development of the property. Guttman also acknowledged that A&A Conte "owns the whole property" to be developed, though he stated that "it is possible [it] could divide it." The trial court characterized testimony regarding Conte's intention to subdivide the land as "speculation." When asked why plaintiff wished to acquire the subject property, Guttman's first response was that plaintiff had "a development obligation with the property owner to the west" (*i.e.*, the annexation agreement).

¶ 13     The trial court relied on *City of Chicago v. Eychaner*, 2015 IL App (1st) 131833, ¶ 71, where it was held: "Recognizing the difference between a valid public use and a sham can be challenging. But a telling feature of sound public use in the context of economic redevelopment is the existence of a well-developed, publicly vetted, and thoughtful economic development plan." Similarly, it also pointed to *Southwestern Illinois Development Authority v. National City Environmental, LLC*, 199 Ill. 2d 225, 240 (2002), where the absence of any sort of "study" or "economic plan" was cited in support of the proposition that a taking was not in furtherance of a public use. Plaintiff distinguishes these cases on their facts, and we agree that they are not so

analogous as to be controlling. However, they do provide some guidance here. Notably, both (in part) stand for the proposition that the absence of plans for development provides a basis for the trier of fact to discount the possibility that the development will actually occur. In its reply brief, plaintiff argues that there is no requirement that development plans must be submitted to justify a taking. We have no quarrel with this proposition; however, these cases do indicate that the trier of fact may infer from the absence of such plans that the development is not actually intended and, in turn, the taking is intended to solely benefit a private landowner. Cases like *Village of Round Lake v. Amann*, 311 Ill. App. 3d 705, 714-15 (2000), which hold that the fact that a taking benefits a private party does not render it invalid so long as it also benefits the public are not on point, because the trial court found that "there is no evidence whatsoever to suggest that the taking of Reque Road is necessary to serve any public purpose whatsoever."

¶ 14 On the other hand, evidence in the record also supports defendant's position. In finding defendant had carried her burden, the trial court relied heavily on plaintiff's contractual agreement with A&A Conte in determining that there was no public purpose underlying the taking. It expressly cited *Southwestern Illinois Development Authority*, 199 Ill. 2d 225. As plaintiff points out, that case differs from this one in that the condemnor there took land and transferred it to another private party to construct a parking lot whereas here, Reque Road was to remain in municipal control. Despite this difference, *Southwestern Illinois Development Authority* provides sound guidance here.

¶ 15 One of the factors the *Southwestern Illinois Development Authority* court relied on was the existence of a contractual relationship between the condemnor and the third party to whom the land was transferred. *Southwestern Illinois Development Authority*, 199 Ill. 2d at 240. The Southwestern Illinois Development Authority (SWIDA) "advertised that, for a fee, it would

condemn land at the request of 'private developers' for the 'private use' of developers." *Id*. It entered into a contract with Gateway (a racetrack) to condemn whatever land Gateway desired. *Id*. SWIDA attempted to condemn land from a neighboring landowner for Gateway to use to build a parking lot. *Id.* at 229. The *Southwestern Illinois Development Authority* court held that this did not serve a public purpose:

> "Clearly, the foundation of this taking is rooted not in the economic and planning process with which SWIDA has been charged. Rather, this action was undertaken solely in response to Gateway's expansion goals and its failure to accomplish those goals through purchasing [the adjacent property owner's] land at an acceptable negotiated price. It appears SWIDA's true intentions were to act as a default broker of land for Gateway's proposed parking plan." *Id.* at 240-41.

Thus, the contractual relationship between the condemnor and the beneficiary of the taking provided a reason for the *Southwestern Illinois Development Authority* court to call the condemnation into question.

¶ 16 Admittedly, in this case, the relationship between A&A Conte and plaintiff was not nearly as overt as the relationship between SWIDA and Gateway. Here, in 2004, A&A Conte and plaintiff entered into an annexation agreement. The agreement was good for 20 years and specified that the A&A Conte property was to be zoned for manufacturing. At the time, Reque Road was believed to be a public road, albeit undeveloped. Part of the annexation agreement required A&A Conte to "install and construct roadway improvements within the Reque Road right-of-way." Based on these facts, the trial court found, "Similar to the facts presented in *Southwestern,* the agreement here suggests that the City's true motivations behind the taking is to satisfy its

contractual obligations to Conte, a private party." Hence, given the existence of the annexation agreement, the trial court's finding has support in the record.

¶ 17    Indeed, two considerations have been identified as being particularly relevant to ascertaining whether a taking is in furtherance of a public purpose: "(1) the actual motives behind the taking and (2) whether the taking was an independent and legitimate decision to further a planned public use." *BNSF Ry. Co. v. Grohne*, 2019 IL App (3d) 180063, ¶ 59. Evidence of record provided bases for the trial court to resolve both of these considerations in favor of defendant. As noted, the existence of plaintiff's contractual obligation to A&A Conte provides a reason to conclude that the actual motive behind the taking was to benefit a private party. Furthermore, the absence of well-developed plans documenting an intended public use allows an inference that this proposed taking is not in furtherance of a "planned public use." The trial court, in fact, resolved both factors in defendant's favor.

¶ 18    Moreover, these decisions were factual in nature. See *Amann*, 311 Ill. App. 3d at 712 ("Our standard for reviewing a trial court's decision on a traverse and motion to dismiss is whether the order is against the manifest weight of the evidence presented."). As the appellant, plaintiff bears the burden of establishing error on appeal. *Behrstock v. Ace Rubber Hose Co.*, 147 Ill. App. 3d 76, 86 (1986) ("On appeal, it is well settled that all reasonable presumptions are in favor of the action of the trial court and that the burden is on the appellant to show affirmatively the errors assigned on review; he has the burden of overcoming the presumption that the trial court's judgment was correct."). Thus, for us to reverse, *plaintiff* would have to establish that an opposite conclusion to the trial court's regarding whether defendant carried its burden during the proceedings below is clearly apparent. *Gerber*, 276 Ill. App. 3d at 1093. Given the conflicting evidence outlined above, we simply cannot come to such a conclusion. Moreover, to the extent

the trial court's decision rests on a rejection of Guttman's testimony, we owe it significant deference, as credibility determinations are matters for the trier of fact. *Old Second National Bank of Aurora*, 327 Ill. App. 3d at 739. Plaintiff complains that the trial court "ignore[d] the plethora of evidence" it submitted indicating Reque Road will benefit the public. However, it appears to us that the trial court did not "ignore" plaintiff's evidence—for example, it discussed Guttman's testimony in detail. Rather, the trial court simply chose not to assign much weight to it, as was its prerogative. *Id.* A reviewing court may not simply substitute its judgment for that of the trier of fact on such matters. *Valasquez v. Yellow Cab Co.*, 32 Ill. App. 3d 934, 936 (1975). In short, after considering all of the evidence and the applicable standard of review, we are compelled to hold that the trial court's decision is not against the manifest weight of the evidence.

¶ 19    Before closing, we will comment on plaintiff's reliance on certain cases. Plaintiff complains that the trial court did not give proper consideration to *City of Chicago v. Vaccarro*, 408 Ill. 587 (1951). Plaintiff asserts, correctly, that *Vaccarro* holds that a condemnor "has a right to and should consider not only the present needs of the public, but those which may be fairly anticipated in the future." *Id.* at 772. Plaintiff then argues: "While immediate need for Reque Road might not be present, Guttman testified that the City is recently experiencing a tremendous growth in economy, spurring development, which the City expects to occur in the vicinity of the Property. Defendants offered no rebuttal to this evidence." The problem for plaintiff here, of course, is that the trial court attributed little weight to Guttman's testimony. Assuming, *arguendo*, that plaintiff is correct in asserting that defendant offered no rebuttal evidence on this point, "the trier of fact is always free to disbelieve any witness." *Franciscan Communities, Inc. v. Hamer*, 2012 IL App (2d) 110431, ¶ 47; see also *People v. Younge*, 83 Ill. App. 3d 305, 309 (1980) ("The

defendant's testimony, even if unrebutted, need not be believed by the trier of fact."). This is true regardless of whether we are addressing Guttman's testimony regarding a present or future need.

¶ 20    Plaintiff also cites *Department of Public Works & Buildings v. Farina*, 29 Ill. 2d 474, 480 (1963), where the supreme court sanctioned a taking of a strip of land connecting a parcel of private property with a freeway. We note that the holding rested, in part, on the unique nature of limited access highways. *Id.* at 478-79. More importantly, we do not read *Farina* as establishing a *per se* rule that whenever condemned land is used to build a road that is open to the public, the taking is justified. Such a rule would allow a condemnor to take land to build a road no one had any interest in using by the simple artifice of allowing the public to use the road despite that fact that it was unlikely that anyone actually would do so. Thus, *Farina* is no bar to the trial court concluding—*as a matter of fact*—that the attempted taking in this case was not in furtherance of a public use.

¶ 21    Similarly, plaintiff's reliance on *Alsip Park District v. D & M Partnership*, 252 Ill. App. 3d 277 (1993), is misplaced. In that case, the plaintiff wished to acquire the land in question for a park. It is true that the *Alsip* court stated that the trial court's grant of the defendant's traverse and motion to dismiss was erroneous, in part, because "plaintiff is not required to have a specific development plan for the site prior to its acquisition." *Id.* at 288. However, this was not the only reason that the trial court's finding was held to be contrary to the manifest weight of the evidence. In addition to the absence of a concrete plan, the trial court made erroneous findings regarding whether plaintiff had adequate land for parks within its borders. *Id.* Here, conversely, the trial court did not make an additional finding that could be deemed erroneous; rather, it found, based on the existence of the annexation agreement, that plaintiff's true purpose in taking the land at issue was to satisfy a private obligation. Thus, *Alsip* is distinguishable. Moreover, as in *Farina*, we do not read *Alsip* as establishing a *per se* rule that the absence of a concrete plan is not relevant.

As we see it, it is a pertinent factor that a court may consider in ascertaining whether a taking serves a *bona fide* public purpose. Here, in light of the totality of the evidence in the record, the trial court determined that it did not, and we cannot say that an opposite conclusion to the one reached by the trial court is clearly apparent.

¶ 22                                    IV. CONCLUSION

¶ 23    In light of the foregoing, the judgment of the circuit court of Du Page County is affirmed.

¶ 24    Affirmed.